## COMMONWEALTH v. EDISON ELEC. LIGHT CO.

APPEALS BY COMMONWEALTH AND DEFENDANT FROM THE
COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

## COMMONWEALTH v. CHESTER ELEC. L. & P. CO.

APPEAL BY COMMONWEALTH FROM THE COURT OF COMMON
PLEAS OF DAUPHIN COUNTY.

Argued June 1, 2, 1891—Decided October 5, 1891.
[To be reported.]

1. A corporation whose business is producing electricity and selling it to customers for the generation of light, heat or power, is not a manufacturing corporation, within the meaning of § 20, act of June 30, 1885, P. L. 199, exempting from taxation the capital stock of such corporations, other than those engaged in the manufacture of liquors or of gas : Commonwealth v. Light & Power Co. ante, 105.

2. Capital stock, issued by a corporation in consideration of the exclusive right to use a patented appliance within certain territory, the patentee retaining exclusive ownership of the patent, and absolute control over the manufacture, use and disposition of the instruments to be used by the licensee, is not an investment in patent rights, and is therefore taxable : Commonwealth v. D. & P. Teleg. Co., ante, 121.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 22, 32, 23, May Term 1891, Sup. Ct.; court below, Nos. 47 June Term, 60 September Term 1890, C. P.

### COMMONWEALTH v. EDISON ELEC. L. CO.

On March 20, 1890, the Edison Electric Light Company, of Philadelphia, filed in the court below its appeal from, and specification of objections to an account settled by the auditor general and state treasurer, charging the company with a tax on its capital stock for the year ending the first Monday of November, 1887, under § 4, act of June 7, 1879, P. L. 114.

The case was tried on November 25, 1890, without a jury,

Decision of Court below.

upon a submission under the act of April 22, 1874. P. L. 109 ; and on January 5, 1891, the court, McPHERSON, J., filed the following decision :

### FINDINGS OF FACT.

1. The defendant is a Pennsylvania corporation, chartered December 23, 1886, under the general corporation act of 1874, for the purpose of " manufacturing and selling electrical light, heat and power," P. L. [1887] 545.

2. It was admitted upon the trial and we find as a fact that the electricity, and the light supplied by this company are produced as follows :

[Here followed a description of the manner in which electric light was produced, identical with that embodied in the findings of fact in Commonwealth v. Light & Power Co., ante, page 106.]

3. The business of the defendant, in the year 1887, was confined exclusively to preparing a plant for the purpose of supplying light to customers, by means of electricity, through the instrumentality of engines and dynamos, substantially as described in paragraph 2. The business of so supplying light did not begin until March, 1889.

4. During the tax year ending the first Monday of November, 1887, it declared no dividend, and its capital stock was appraised at $140,000.

5. During said year, its actual capital stock was $140,000 ; and of this amount $49,000, either in cash or stock, was issued and paid to the Edison Electric Light Company of New York, under an agreement and a license dated February 3, 1887, for the right to use its patents within the city of Philadelphia. Without this right, the defendant could not carry on its business and furnish light to its customers. We find that said right was fairly worth the price paid for it, and in 1887 constituted in actual value $\frac{49000}{140000}$ parts of all the property and assets represented by the defendant's capital stock. We make the said agreement and license part of this finding.[1]

### CONCLUSIONS OF LAW.

1. Defendant is not a manufacturing corporation, and is not exempt from taxation on its capital stock by § 20 of the act of June 30, 1885, P. L. 199.[a]

2. Defendant is not taxable upon so much of its capital stock

as is invested in the right to use the patents above referred to, and the settlement appealed from is erroneous, so far as it taxes said portion of defendant's capital stock.[2]

3. The commonwealth is entitled to recover as
follows:     .     .     .     .     .     .     .
Tax at three mills upon $91,000, .     .     .     $273.00
Interest at twelve per cent from November 6,
   1888, to January 3, 1891,     .     .     .     .     70.68
Attorney general's commission,     .     .     .     .     13.65
 
    Total,     .     .     .     .     .     .     .     $357.33

for which amount the prothonotary is directed to enter judgment, unless exceptions are filed as required by law.

—The agreement of February 3, 1887, made a part of the findings of fact, was between " the Edison Electric Light Company, hereinafter called the Light Company, party of the first part, and the Edison Electric Light Company of Philadelphia, . . . . hereinafter to be called the Illuminating Company, party of the second part." It stipulated that the light company should grant to the illuminating company the license set out below ; that the business of the latter company should be conducted in accordance with certain regulations ; that the light company, upon certain conditions, would consent to the transfer of the license to a subordinate company formed to operate in parts of the territory covered thereby, and that the light company should receive five per cent of all moneys paid into the treasury of the illuminating company by its stockholders, and also thirty per cent of its capital stock, to be issued as full paid and non-assessable. The contract provided further as follows:

" 5. All original installations, enlargements, renewals, additions, or extensions of the plant of the Edison system shall be made subject to rules and specifications to be prescribed from time to time by the Light Company, with the view to maintain the best standard in the quality of all machines, apparatus, articles, methods or devices, and in the manner of employing the same. The Light Company shall, upon the request of the Illuminating Company, but at its charge, supply to it all the necessary drawings, specifications and directions for the installation of any of the patented machines, apparatus, articles,

methods or devices covered by this agreement. In case the Illuminating Company shall undertake the construction of their own plant, or enter into a contract with other parties to construct it, the plant shall not be paid for until inspected by a duly authorized agent of the Light Company, and the Illuminating Company will pay to the Light Company the cost of such inspection.

" 6. It is understood that the Light Company is not now engaged in manufacturing, but that it undertakes and agrees to secure fair and uniform prices to all its licensees, and especially to secure to the Illuminating Company and its sublicensees under his contract, terms as favorable as are given to any purchasers in like amount in the United States."

The license granted in pursuance of the foregoing agreement, bore date the same day. A preamble thereto recited that the light company (licensor) was the owner of inventions and letters patent for inventions of Thomas A. Edison, specified in an annexed schedule, and was entitled to acquire further inventions of like character, made by said Edison, and all letters patent of the United States, issued or to be issued therefor, and that the illuminating company (licensee) was desirous of acquiring the exclusive right to use such inventions and letters patent within the territory defined by the license, for the purpose of lighting, heating and power, as afterwards expressly defined. It then proceeded in part as follows :

" 1. The party of the first part, licensor, hereby licenses the party of the second part, the full and exclusive right within and for the territory herein defined, in the third article, to use by itself or its customers, as prescribed in clause A of this article, and for the purposes authorized in the fourth article hereof, and for no other purposes, all the inventions and letters patent of the United States referred to in the preamble hereof, which the Light Company now owns or may own at any time within the period of the operation of this agreement, so far as the same are embodied or used in the plant, machinery, lamps, materials, means and appliances which are lawfully acquired by said Illuminating Company under said contract.

" Clause A. The right of customers of said Illuminating Company to use the inventions hereby licensed to it extends and is limited to the use by those persons, associations or corporations

only whom it shall supply as customers in the ordinary course of the business which it is authorized to do, and so long only as such persons shall be such customers and shall perform duly all the terms of the contracts under which they become customers.

" 2. The right licensed to the party of second part, in the letters patent and inventions referred to in the first article hereof, shall continue as to each thereof so long as the Light Company's right in such inventions and letters patent shall continue, except as herein otherwise specially agreed, but provided and so long only as said party of the second part shall perform its part of this agreement.

" 3. The territory within and for which the right defined in the first article hereof is now licensed to the Illuminating Company, and in and for which the provisions of this instrument now operate, is the corporate limits of the city of Philadelphia, Pennsylvania.

" 4. The right hereby licensed embraces the use of all the inventions and letters patent described in said agreement between the parties hereto, which the licensor may at any time during the operation of this instrument then own or control, for the purposes of producing, controlling, conducting, measuring and using electricity or electric currents for any of the objects named in clauses 1, 2 and 3 of this article and for no others, namely : . . . . .

" 5. The parties agree that this license does not embrace or authorize the use of any of the aforesaid inventions or letters patent, or any means of employing the same, for any purpose not specifically mentioned herein, nor especially in or for propelling railway trains, or furnishing power for any uses of railway traffic, or on tramways or common roads ; nor for any of the purposes described in the fourth article, on steamships, ferry-boats, sailing vessels, or marine craft of any description. And it is agreed that this enumeration does not include all forbidden uses.

" 6. It is mutually agreed by the parties hereto that this instrument gives only a license and right to use the inventions and letters patent covered by it, and only within the territory licensed hereby, and otherwise as herein provided, and does not give any right to make or vend any of said inventions covered by any of said patents, except to customers for isolated use within said territory."

Arguments.

"8. The right hereby licensed to the party of the second part is personal to it and not assignable, and it covenants and agrees that it will not assign or attempt to assign this instrument or any of the rights granted to it to any other person or corporation without the consent in writing of the licensor, except as provided in the contract hereto attached; and upon any assignment or attempted assignment of such rights, made or attempted to be made, by the party of the second part, or resulting by operation of law, or upon any other divesting of the title or right of said party of the second part hereunder, this license and all rights granted hereby shall, at the election of the licensor, be thereupon forfeited, canceled and annulled."

—It was further provided in the license that the rights of the licensee thereunder might be revoked by the licensor upon the occurrence of a breach of any one of certain other stipulations which were to be complied with by the licensee.

Exceptions to the findings of fact and conclusions of law were filed by both the commonwealth and the defendant. The commonwealth's exceptions averred that the court erred in the fifth finding of fact,[1] in the second conclusion of law,[2] and in not entering judgment for the full amount of the commonwealth's claim.[3] The defendant's exceptions specified error in the first conclusion of law;[a] in not holding that the act of June 7, 1879, P. L. 112, in so far as it imposed a tax upon the defendant's capital stock, was repealed by § 20, act of June 30, 1885, P. L. 199;[b] in directing judgment to be entered for the commonwealth for $357.33;[c] and in not directing judgment for the defendant.[d]

On April 2, 1891, the court, McPherson, J., overruled the exceptions and entered judgment in accordance with the decision previously filed; whereupon the commonwealth took the appeal to No. 22, specifying that the court erred:

1–3. In not sustaining the commonwealth's exceptions.[1 to 3]

The defendant took the appeal to No. 32, assigning for error:

1–4. The overruling of defendant's exceptions.[a to d]

Mr. James A. Stranahan, Deputy Attorney General, (with him Mr. W. U. Hensel, Attorney General,) for the Commonwealth, appellant in No. 22, appellee in No. 32:

The agreement between the defendant and the Edison Elec-

tric Light Company of New York does not assign or convey to the former any interest in the latter's inventions, discoveries or patents, but only the right to make and use the product of the patent or the discovery. No right whatever is given in the, franchise itself; only a license to use the product. The stock in question is therefore a proper subject of taxation: Patterson v. Kentucky, 97 U. S. 501; Webber v. Virginia, 103 U. S. 344; People v. Telephone Co., 29 Am. & Eng. Corp. Cas. 616; Commonwealth v. Telephone Co., 129 Pa. 217.

*Mr. M. E. Olmsted* (with him *Mr. Samuel B. Huey*), for the defendant, appellee in No. 22, appellant in No. 32:

The question raised is not as to the power of the state to tax capital stock invested in tangible articles manufactured under patents, but as to the taxation of stock invested in the patents themselves, or in licenses granted by the patentees. The finding of the court below that the stock now in question is invested in such a license, is not reviewable: Commonwealth v. Hulings, 129 Pa. 317. In fact, however, the New York company did not convey to the defendant any apparatus or tangible property whatever. On the contrary, as the agreement shows, the defendant was not to procure its plant and appliances from the licensor, but was to "undertake the construction of their own plant, or enter into a contract with other parties to construct it." Indeed, it appeared from the testimony that in the year 1887, the plant was not yet erected, and the defendant had no tangible property except a piece of ground and some conduits laid in the streets.

Counsel then cited, as to the taxability of capital stock invested in patents, the cases cited for the appellee in Commonwealth v. D. & P. Teleg. Co., ante, 121.

COMMONWEALTH V. CHESTER ELEC. LIGHT & P. CO.

To No. 60 September Term 1890, of the court below, the Chester Electric Light and Power Company filed an appeal from an account settled by the auditor general and state treasurer against the company, for tax on capital stock, under § 4, act of June 7, 1879, P. L. 114, and § 21, act of June 1, 1889, P. L. 429, for the year ending the first Monday of November, 1889, with a specification of objections.

Decision of Court below.

The case was tried November 25, 1890, without a jury, on a submission under the act of April 22, 1874, P. L. 109. On January 5, 1891, the decision of the court, McPHERSON, J., was filed, finding inter alia, in substance, that the defendant was engaged in the business of supplying light to its customers in the city of Chester, by means of its dynamos, wires and lights, or lamps, and was not engaged in furnishing heat or power, or in manufacturing any electric or other apparatus; that the light was produced by electricity in the manner described in the finding of facts in Commonwealth v. Elec. L. & P. Co., ante, 106; that the defendant declared four dividends of two per cent each, during the tax year ending the first Monday of November, 1889, upon an average capital stock of $59,506.25, and added to its sinking fund the sum of $1,750; [that its capital stock was $70,000, and of this amount $15,000 was issued and paid to the Edison Electric Light Company of New York, under an agreement and license dated October 26, 1885, for the right to use certain patents within the city of Chester and certain other territory, which right was necessary to the defendant, fairly worth the price paid for it, and constituted in actual value not less than $15,000 of the property and assets represented by the defendant's capital stock.][2] The agreement and license were made a part of the finding. They were in the same form as those set out in Commonwealth v. Edison Elec. Light Co., supra. The following were the

CONCLUSIONS OF LAW:

1. Defendant is not a manufacturing corporation, and is not exempt from taxation on its capital stock by § 20 of the act of June 30, 1885, P. L. 199, or by the last proviso to § 21 of the act of June 1, 1889, P. L. 431.

2. Defendant is not taxable upon so much of its capital stock as is invested in the right to use the patents above referred to, and the settlement appealed from is erroneous, so far as it taxes said portion of defendant's capital stock.[1]

The commonwealth is entitled to recover as follows:

Tax at four mills upon $44,506.25, . $178 02
Tax upon $1,750.00 (sinking fund), . . 87 50
———— $265 52
Interest twelve per cent from June 24, 1890, 16 79

Amount brought forward, . . . . . $282 31
Attorney general's commission, . . . 13 27

Total, . . . . . . $295 58

for which amount we direct judgment to be entered if exceptions are not filed according to law.

—Exceptions filed by the commonwealth to the finding of fact,[2] to the conclusion of law,[1] and to the entry of judgment for less than the full amount of the commonwealth's claim,[3] having been overruled, and judgment having been entered in accordance with the decision of the court, the commonwealth took the appeal to No. 23, specifying that the court erred :

1–3. In not sustaining the commonwealth's exceptions.[1 to 3]

*Mr. Jas. A. Stranahan*, Deputy Attorney General, (with him *W. U. Hensel*, Attorney General,) for the Commonwealth.

*Mr. Robert Snodgrass*, for the appellee.

COMMONWEALTH'S APPEAL, NO. 22.

OPINION, MR. JUSTICE WILLIAMS :

Two questions are raised in this case.   The first is whether the appellee is a manufacturing company.   While it might well be so regarded, if the question were an open one, we have no doubt that it does not come within the class recognized by our acts of assembly relating to manufacturing companies ; and the learned judge of the court below reached a correct conclusion upon this question, for reasons given in the opinion of this court just filed in the case of Commonwealth v. Light & Power Co., ante, 105.

The other question is whether any portion of the capital stock of the Philadelphia company is invested in patent rights, and for that reason exempt from taxation.   The court below was of the opinion that stock issued to the Edison Electric Light Company of New York, amounting to about forty-nine thousand dollars, out of a total capital of one hundred and forty thousand dollars, was invested in patent rights, and therefore exempt.   This finding rests on the written agreement or license bearing date on the third day of February, 1887, and we are now to inquire whether the finding is sustained by the agree-

ment. It contains a recital that the Edison Electric Light Company of New York is the owner of many patents obtained for appliances used in the production of electricity by artificial means, its delivery to customers, and its utilization for purposes of light, heat, and power. It recites, further, the desire of the Philadelphia company to acquire an exclusive right to use such appliances in the city of Philadelphia. Then follows the grant of the desired exclusive right, but only as to the use of the appliances, and under certain conditions and limitations which show plainly the purpose of the owners of the patents to maintain their exclusive ownership in them, and their absolute control over the manufacture of the appliances, and over the manufactured articles when finished. Among these conditions is one that limits the right of the licensee to the supply of its customers on the described circuit; another, forbidding the use of the license for any other purposes than such as relate to light, heat, and power to propel stationary machinery; another, declaring the license to be personal to the licensee, and forbidding any assignment or transfer of it. Still another reserves to the New York company the right to terminate the license on any default made, resume the exclusive ownership of the territory, and grant a new license to another party covering the same exclusive right in the same territory.

Under this agreement, the licensee secures the right to use the appliances made under the several patents held by the licensor, for a fixed price, to be paid in money, in its own stock, or in both; and it secures nothing more. The New York company, on the other hand, retains its exclusive ownership of all its patents, an absolute control over the manufacture of its appliances protected by the patents, and over the use and disposition of every one of the manufactured articles which its licensee uses. We have just held in Commonwealth v. D. & P. Teleg. Co., ante, 121, following Patterson v. Kentucky, 97 U. S. 501; Stephens v. Cady, 14 How. 528; Webber v. Virginia, 103 U. S. 344, that the exclusive right secured to the inventor by letters patent, is an incorporeal right, clearly distinguishable from the ownership of the instrument or appliance manufactured under and by virtue of that right; and that a lessee of the instrument or appliance acquires no title to or ownership in the patent under which it was made. In the

language of Justice FIELD, in Webber v. Virginia, supra: " The right conferred by the patent laws of the United States on inventors, to sell their inventions and discoveries, does not take the tangible property, in which the invention or discovery may be exhibited or carried into effect, from the operation of the tax and license laws of the state." Whether the " tangible property," that is, the machines or appliances made and ready for use, is in the hands of the makers, of venders, lessees, or licensees, can make no difference. Such property is not a patent right, but the visible, tangible fruit of the right secured by the patent, which passes to a purchaser or lessee in precisely the same way that any other manufactured articles pass from the maker to the buyer or lessee. It is not necessary to repeat what was said upon this subject in Commonwealth v. D. & P. Teleg. Co., supra ; but, for reasons given in the opinion filed in that case, we reverse the judgment as to the taxability of the stock of the appellee used to pay the rent of, or price of the license to use, the manufactured appliances of the New York company in its business in Philadelphia.

> Judgment is now entered in favor of the appellant, the commonwealth of Pennsylvania, for the sum of one hundred forty-seven dollars, with interest and costs in addition to the judgment entered in the court below.

Tax on $49,000, capital stock,   .   $147.00
Int. at twelve per cent from Nov. 6,
· 1888, to   .   .   .   .
Attorney general's commission,

DEFENDANT'S APPEAL, NO. 32.

OPINION, Mr. JUSTICE WILLIAMS :

· This is an appeal from the same decree which we have just considered. on the appeal of the commonwealth. The only question here presented is whether the appellant is a manufacturing corporation, within the meaning of the act of 1885, exempting manufacturing corporations from the operation of the revenue law of 1879. This question is disposed of by the opinion in Commonwealth v. Light & P. Co., ante, 105, filed herewith. For reasons given in that case

> This appeal is dismissed, and the judgment affirmed.

COMMONWEALTH'S APPEAL, NO. 23.

OPINION, MR. JUSTICE WILLIAMS:

The question presented upon this appeal is identical with that presented by the appeal of the commonwealth from the judgment in the case of Commonwealth v. Elec. Light Co., in which an opinion has just been filed. For reasons there given we reverse the judgment entered in the court below, so far as it relates to the taxability of the stock of the appellee, used to pay the rent for, or the price of the license to use the manufactured instruments or appliances furnished by the Edison company in New York to the Chester company, for use in carrying on their business in the city of Chester.

> Judgment is now entered in favor of the commonwealth for the further sum, as follows:
>
> Tax on $15,000, capital stock,  .  .   $60
> Interest at twelve per cent,   .  .
> Attorney general's commission,   .