BALL v. COKER et al.

(Circuit Court, D. South Carolina. February 24, 1909.)

1. PATENTS (§ 1*)—NATURE OF PATENT RIGHTS.
The right to a patent monopoly exists only by virtue of the laws of the United States, and cannot be affected by state laws.
[Ed. Note.—For other cases, see Patents, Dec. Dig. § 1.*]

2. PATENTS (§ 196*)—TRANSFER—REQUISITES ON VALIDITY.
A patent monopoly can only be transferred in the manner prescribed by Rev. St. § 4898 (U. S. Comp. St. 1901, p. 3387), namely, by a written instrument signed by the owner of the patent and duly recorded.
[Ed. Note.—For other cases, see Patents, Dec. Dig. § 196.*]

3. EXECUTION (§ 26*)—PROPERTY SUBJECT—PATENT RIGHTS.
A patent right cannot be sold on execution.
[Ed. Note.—For other cases, see Execution, Cent. Dig. § 67; Dec. Dig. § 26.*]

4. RECEIVERS (§ 67*)—TITLE TO PROPERTY—PATENT RIGHTS.
A patent right does not pass to a general assignee or receiver of property of the owner.
[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 67.*]

5. PATENTS (§ 265*)—SUIT FOR INFRINGEMENT—TITLE TO SUPPORT—RECEIVER.
The mere appointment of a receiver to take charge of, manage, and control a patent does not vest in him title to the patent which will enable him to maintain a suit for its infringement in his own name, Rev. St. § 4919 (U. S. Comp. St. 1901, p. 3394), giving the right to recover damages only "in the name of the party interested either as patentee, assignee or grantee." To vest the receiver with such right of action, it is essential that the court compel or cause an assignment of the patent to him in the name of the owner.
[Ed. Note.—For other cases, see Patents, Dec. Dig. § 265.*]

In Equity.

Legare, Holman & Baker, for complainant.
Miller, Whaley & Bissell, for defendants.

BRAWLEY, District Judge. The plaintiff above named filed his amended bill in this court March 30, 1908, alleging, among other things, that he had been appointed by the court of common pleas for the county of Charleston, S. C., receiver of letters patent No. 807,990, issued to W. T. Ball, George S. Legare, Thomas R. Harney, Hampton

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

K. Lea, and Charles Miner, which patent was for a process called the "double-hulling process," for hulling cotton seed of various sizes without disintegrating the meats, and charged that the defendants had for more than two years last past employed, practiced, and used the said double-hulling process, and prayed for a decree for infringement, and for an accounting of the profits, for damages, and so forth. The answer of the defendants, among other defenses, required proof that the plaintiff had qualified as such receiver, and alleged that he is not the owner of said letters patent, and is not entitled to file said bill of complaint, or to bring suit upon said patent as such receiver. It appears that letters patent No. 807,990 were granted December 19, 1905, to William T. Ball, Hampton K. Lea, George S. Legare, Thomas R. Harney, and Charles Miner; that on May 31, 1905, the parties above named entered into an agreement in writing referring to the application for letters patent then pending, and agreed that each should have an equal interest in and to said invention, and that no assignment, grant, license, conveyance, permit, or any right whatsoever under said invention should be made without the written consent of all the parties thereto, and that, in the event of any disagreement as to the propriety of any sale, assignment, grant, or conveyance, any matters of dispute should be submitted to arbitration, and so forth. It further appears that disagreements did arise, and that in October, 1907, a complaint was filed in the court of common pleas for the county of Charleston, state of South Carolina, in which W. T. Ball and George S. Legare were plaintiffs, and Hampton K. Lea, Thomas R. Harney, and Charles Miner were defendants. The complaint, among other things, charged that, for certain personal and selfish motives on the part of the defendants, Thomas R. Harney and Charles Miner, they have failed and refused to co-operate with the other owners of said patent in the use, management, and control thereof. The complaint prayed that a receiver be appointed pending the litigation to take charge of, control, and manage the patent mentioned, and that the same be sold under an order and decree of that court. An order was entered in that cause by the presiding judge of the court November 19, 1907, reciting, among other things, that Charles Miner, one of the defendants, resided in the state of North Carolina, and Thomas R. Harney, one of the defendants, resided in the District of Columbia, and that upon the commencement of the action an order of publication was obtained, and that said defendants had been personally served with the summons and complaint, and on motion of the plaintiffs' attorneys it was ordered that William T. Ball "be and he is hereby appointed receiver of said letters patent, and he is authorized, required and commanded to take charge of, manage and control the same, as fully and effectually as the owners thereof could do in such behalf"; and it was further ordered that "any revenue received by receiver from said patent be deposited in some reputable bank, and the funds held subject to the further order of the court."

The bill in this case was filed by the receiver pursuant to his appointment, and the question for decision is whether a suit can be maintained in the name of the receiver.

Section 4919 (U. S. Comp. St. 1901, p. 3394) of the Revised Statutes provides:

"Damages for the infringement of any patent may be recovered by action on the case in the name of the party interested, either as patentee, assignee or grantee."

Section 4898 (U. S. Comp. St. 1901, p. 3387) of the Revised Statutes provides that:

"Every patent or any interest therein should be assignable in law by an instrument in writing, and the patentee or his assigns or legal representatives may in like manner grant and convey an exclusive right under his patent to the whole or any specified part of the United States."

The statute further provides for the recording of any assignment, grant, or conveyance in the Patent Office.

That the receiver, the plaintiff in this case, is not the patentee, assignee, or grantee is plain, and by the terms of the statute damages for the infringement, it is claimed, can only be brought in the name of such party. Without going at great length into the learning as to the nature of the property rights in patents, it may be said that such rights are wholly the creation of the statutes of the United States. In Stevens v. Gladding et al., 17 How. 451, 15 L. Ed. 155, Mr. Justice Curtis says:

"There would certainly be great difficulty in assenting to the proposition that patent and copyrights held under the laws of the United States are subject to seizure and sale on execution. Not to repeat what is said on this subject in Stephens v. Cady, 14 How. 531, 14 L. Ed. 528, it may be added that these incorporeal rights do not exist in any particular state or district. They are coextensive with the United States. There is nothing in any act of Congress, or in the nature of the rights themselves, which give them locality anywhere, so as to subject them to the process of courts having jurisdiction limited by the lines of states and districts."

The case referred to in 14 How. 531, 14 L. Ed. 528, is Stephens v. Cady, a case of copyright, where Justice Nelson, who delivered the opinion of the court, says:

"But the incorporeal right secured by the statute to the author to multiply copies of the map by the use of the plate, being intangible and resting altogether in grant, is not the subject of seizure or sale by means of this process, certainly not at common law. No doubt the property may be reached by a creditors' bill, and be applied to the payment of the debts of the author, the same as stock of the debtor is reached and applied, the court compelling the transfer and sale of the stock for the benefit of the creditors; but in case of such remedy we suppose it would be necessary for the court to compel a transfer to the purchaser in conformity with the requirements of the copyright act in order to invest him with a complete title to the property. * * * An assignment, therefore, that would vest the assignee with the property of the copyright, according to the act of Congress, must be in writing and signed in the presence of two witnesses, and it may, I think, well be doubted whether a transfer, even by a sale under a decree of a court of chancery, would pass the title so as to protect the purchaser unless by a conveyance in conformity with this requirement."

2 Robinson on Patents, § 766, states the law as follows:

"That rule that an assignment can be made only by the actual owner of the patented invention admits of no exception in the interest of creditors. Valuable as his property therein may be, it cannot be subjected to the payment of his debts by any of the ordinary methods of involuntary alienation. This is

not due to any peculiar sanctity which the law attaches to this class of property, but to the fact that the statutes which create the monopoly provide no other mode of transferring it than through the voluntary act of its real owner. The ownership of the patented invention cannot be seized and sold on execution by a sheriff like a personal chattel, nor, like other incorporeal rights, does it vest in a receiver or trustee in insolvency by virtue of the judicial decree of the court by which these various officials are appointed. Thus neither a bankrupt court nor a court of equity, nor any person acting under their authority, can affect the ownership of a patented invention without the actual or presumed co-operation of the individual in whom such ownership is vested by the issue of the patent or by assignment from the patentee. Either of these courts may have the power to compel the owner to transfer the ownership by an assignment to the receiver or trustee, and a court of equity on his refusal may treat the equitable rights as vested in the creditors and appoint a trustee for the owner to convey the legal title in his name and behalf to the officer in charge of his bankrupt estate, but the title in all such cases is still derived from him on whom it was originally conferred. That Congress has the power at any time to meet this difficulty by creating methods of involuntary alienation, there can be no doubt, but, in the absence of such statutes and judicial orders, the patented invention remains entirely and exclusively under the control of its owner, and may be retained or conveyed by him at his pleasure, without reference to any existing condition of insolvency."

And a note to this section, on page 524, is as follows:

"That the patent privilege does not rest in a receiver merely by virtue of his appointment, see Dick v. Struthers (C. C.) 25 Fed. 103."

That was a suit for infringement, and Acheson, Judge, says:

"By the law of Pennsylvania, Ames is the mere custodian of the property of the corporation. By virtue of his appointment as receiver, no title to the patent passed from the corporation to him. Doubtless it was competent for the court appointing him to authorize him to bring suit on the patent, but then it should have been brought in the name of the corporation. The objection therefore that the plaintiff, Ames, has no title upon which to maintain this suit, the same being in a corporation, which is not a party hereto, is well taken, and for this cause the demurrer is sustained."

In Gordon v. Antony, 16 Blatchf. 234, Fed. Cas. No. 5,605, a suit had been brought in the state court to recover a debt and judgment obtained, and in proceedings supplementary to execution one Beamish was appointed by said court "receiver of all and singular the debts, property, equitable interests, rights and things in action, of Ebenezer Gordon, the plaintiff, and he was ordered to execute and deliver an assignment of the same to said receiver," but it did not appear that any such assignment was ever executed. The receiver presented a petition to the state court, alleging his appointment and so forth, and that he became vested with all the estate, property, and interest of said Ebenezer Gordon, and, among others, the invention patent, letters patent, and patent rights, and that it was for the interest of the trust that the same should be sold. The sale was thereupon made, reported to the court, and confirmed. Upon the bill filed by Ebenezer Gordon against Antony and others for infringement, the defendants contended that by virtue of such proceedings and such appointment any right which the plaintiff had to recover against them for an infringement of the patent sued on had become vested in the defendants. Judge Blatchford cited the provisions of the statute substantially the same as section 4898, above cited, and says:

"Under them no person may bring suit for profits or damages for infringement who is not the patentee, or such assignee or grantee as the statute points out. The claim to recover profits or damages for this infringement cannot be severed from the title by an assignment or grant so as to give the right of action for such claim in disregard of the statute. Profits or damages for infringement cannot be sued for except on the basis of title as patentee, or as such assignee or grantee to the whole or part of the patent, and not on the basis merely of the assignment of a right to a claim for damages severed from such title. Therefore, if in the present case no such assignment or grant has been made by the defendants as the statute contemplates, they could not bring suit in their own name under the assignment made to them to recover any claims, profits, or damages for infringement which belonged to Gordon, nor could they use the assignment as a defense against any such claims existing against themselves in favor of Gordon. In this case there has been no assignment executed by Gordon. The right claimed for defendants rests, therefore, wholly on the transfer by operation of law."

He then cites Stephens v. Cady, and Stevens v. Gladding, above quoted, and Ashcrop v. Walworth, Fed. Cas. No. 580, where it was held that the title of an insolvent debtor to or his interest in a patent does not pass to his assignee in insolvency by an assignment of his property made by a judge under the insolvency law of Massachusetts. This decision was made on the ground that the assignee in insolvency acquired no title because the conveyance was not such an one as was contemplated by section 11 of the act of 1836, c. 357, 5 Stat. 121, namely, the written instrument signed by the owner of the patent and duly recorded.

In Gayler v. Wilder, 10 How. 478, 13 L. Ed. 504, Chief Justice Taney, in delivering the opinion of the court, says:

"The monopoly did not exist at common law, and the rights, therefore, which may be exercised under it cannot be regulated by the rules of common law. It is created by the act of Congress, and no rights can be acquired in it unless authorized by the statute in the manner the statute prescribes."

Ager v. Murray, 105 U. S. 126, 26 L. Ed. 942, reviews most of the cases above cited, and the effect of the decision is that an assignee in insolvency or a receiver appointed under the laws of the state does not by virtue of the assignment or appointment, merely, without any conveyance made by the patentee, or specifically ordered by the court, acquire a title in patent rights, and that in such cases it would be necessary for the court to compel a transfer in conformity with the requirements of the statute in order to vest a complete title to the property, and concludes:

"Both defendants in the case at bar are before the court and have filed answers. The debtor's interest in the patent rights is property assignable by him, and which cannot be taken on execution at law. The case is thus brought directly within the opinion delivered by Mr. Justice Nelson in Stephens v. Cady, of the soundness of which we entertain no doubt. The clause of the decree below appointing a trustee to execute an assignment if the patentee should not himself execute one as directed by the decree has not been objected to in argument, and is clearly within the chancery powers of the court as defined in the statute of Maryland of 1785, which is in force in the District of Columbia."

In Jewett v. Atwood Suspender Company (C. C.) 100 Fed. 647, the suit was brought upon letters patent issued to Clough, who had assigned in writing to Beaman Bros. Beaman Bros. were adjudged in-

solvents, and the court had appointed one Stone assignee. The court says:

"The defendant relies upon the insufficiency of this assignment from the assignee to convey title. No other title is alleged. Of course, the plaintiff cannot maintain the action without having the title at the time of infringement, and the right to maintain the action depends upon the sufficiency of this title. The allegations follow the state statutes in alleging this title. They provide that the judge of the court of insolvency should assign and convey to the assignee the estate, real and personal, of the debtor, and that the assignment shall vest in the assignee all the property of the debtor, real and personal, that he could have lawfully sold, assigned, or conveyed, or which might be taken on execution. The patent does not confer even the right to this invention; the inventor had that before. It is merely an incorporeal right to exclude others from using the invention throughout the United States, conferred by the government in compliance with certain requirements, and is transferable only according to the laws of its creation, which the state statute cannot affect. This is a personal right. Section 4898, Rev. St. Patents can be reached under the bankrupt law because they are wholly subject to the laws of the United States. They cannot be reached otherwise for debts, except by voluntary proceedings to compel a personal assignment. Here is no voluntary assignment from the Beaman Bros., the assignee of the patent, nor any compulsory assignment from them or proceedings for compelling such an assignment; so the plaintiff does not appear to have had any patent to infringe."

The bankrupt act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) is a recognition of the general law that no title passes except by voluntary or compulsory assignment from the patentee, for it expressly provides that the trustee shall have whatever title the bankrupt had in any patent or patent right or right of action thereunder at the date on which he was adjudged bankrupt. The bankrupt act of 1867, c. 176, 14 Stat. 517, excepted from the corresponding transfer of property which was provided for by that law all patents and other property held in trust by the bankrupt. Under the law of 1867 the title to the patent passed to the assignee in bankruptcy, subject to his election. Walker on Patents, § 290, says:

"Corresponding proceedings in insolvency under the state laws do not have the operation of bankruptcy proceedings in this particular. They do not confer upon the assignee in insolvency any legal title to the patent rights of the insolvent, but a state court which has jurisdiction of such proceedings may compel the insolvent to execute such an assignment to the assignee in insolvency as will convey the same rights to the latter as those which, without such a document, are conveyed to a trustee in bankruptcy under the bankrupt act of 1898 for a state may subject patent rights of an insolvent citizen to the payment of his debts."

And the same writer, in section 155, says:

"The reason why the state may regulate the sale of the patented thing, and may not regulate the sale of the patent covering that thing, is explainable as follows: A patentee has two kinds of rights in his invention; he has a right to make, use, and sell specimens of the invented thing, and he has a right to prevent all other persons from doing either of those acts. The first of these rights is wholly independent of the patent laws, while the second exists by virtue of those laws alone. The patentee, therefore, holds the first of these rights subject to the police powers and the taxing powers of the state, and to the law regulating common carriers, while the second, being the creation of the laws of Congress, is wholly beyond state control or interference by antitrust laws or otherwise."

And in section 156:

"A court of equity may, in pursuance of its powers in such cases, decree that the debtor patentee pay the judgment upon which the bill is based, or, in default thereof, that his patent right be sold under the direction of the court, and an assignment thereof be executed by him, and, in default of his executing such an assignment, that some suitable person be appointed to proceed to execute the same in his place, or that the master in chancery of the courts perform that function."

On the subject of partition, which it seems was the object of the proceedings in the state court, Walker says (section 295):

"Partition of a patent right held by tenancy in common law may of course be made by the common consent, and mutual action of all the owners of that right, but no such partition can be made against the will of either owner."

The order appointing the receiver was entered November 19, 1907, and by its terms he is "authorized, required, and commanded to take charge of, manage, and control the same as fully and as effectually as the owners thereof could do in such behalf." He is further required to deposit any revenue received from the patent in some bank subject to the further order of the court. The bill in this case, filed in March, 1908, alleges an infringement for more than two years last past. If it should be held that the appointment of the receiver was equivalent to an assignment of the patent, it is doubtful that that would carry with it a transfer of the right to damages for an infringement committed before such assignment. No statute of the state of South Carolina has been brought to my attention defining the duties of receivers, but it may be assumed that all of the actual, visible property of parties to a suit within its jurisdiction may be vested by a court in a receiver appointed by it; but as the jurisdiction of such court is limited by the lines of the state, it does not follow that an incorporeal right, such as that of a patent, which owes its existence to the laws of the United States and extends to all the states, is vested in such receiver. The right to this patent is in the five persons named, and the statute prescribes the method of devolution. It seems to me clear, therefore, that the mere appointment of a receiver does not in itself vest in him the title to the patent which will enable him to maintain a suit for infringement. A state court having jurisdiction of the parties may compel them to execute an assignment to the receiver, and as it seems plain that at least three of the owners of the patent are desirous that the receiver be clothed with the necessary power to conduct this suit, and apparently it is to the interest of all, the bill will be held to enable the parties to execute the necessary assignment, and, in the event that any of the parties decline to execute such an assignment, such reasonable time will be given as may enable the parties interested to apply to the state court for such orders as may be necessary to compel the needful assignments.