145  121
145  140
145  147
145  154

## COMMONWEALTH v. CENTRAL D. & P. TEL. CO.

APPEAL BY COMMONWEALTH FROM THE COURT OF COMMON
PLEAS OF DAUPHIN COUNTY.

Argued June 2, 1891—Decided October 5, 1891.
[To be reported.]

(*a*) In consideration of a part of the capital stock of a telephone company, the owner of patents for telephones agreed with the company that it should have the exclusive right for a term of years to use the same within certain territory, the instruments so used to be furnished by, and to remain the property of the patentee, the company paying a rental for their use:

1. The contract not transferring to the telephone company the ownership of any interest in the letters patent, but simply the right to use as a lessee manufactured instruments made thereunder, the stock paid under the contract was not an investment in patent rights, so as to be exempt, under the laws of the United States, from taxation by the state.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 24 May Term 1891, Sup. Ct.; court below, No. 30 January Term 1891, C. P.

·On September 25, 1890, the Central District & Printing Telegraph Company filed its appeal from, and a specification of objections to an account settled by the auditor general and state treasurer, charging said company with tax upon its capital stock for the year ending the first Monday of November, 1889, under § 4, act of June 7, 1879, P. L. 114, and § 21, act of June 1, 1889, P. L. 429.

The case was tried on November 25, 1890, without a jury, on a submission under the act of April 22, 1874, P. L. 109;

Decision of Court below.

and on January 5, 1891, the court, McPHERSON, J., filed the following decision:

FINDINGS OF FACT.

1. The defendant was originally a New York corporation, but became a corporation of this state by accepting a charter under the act of June 9, 1881, P. L. 89. Its business is the supply to the public of telephonic communication in certain counties of Pennsylvania, Ohio and West Virginia.

2. During the tax year ending the first Monday of November, 1889, its capital stock was $500,000, before the twenty-second day of August, upon which date it was increased to $750,000. The increase of $250,000 was issued and paid to the American Bell Telephone Company of Massachusetts, under the seventeenth section of an agreement made November 28, 1879, which agreement is made a part of this finding.[1]

3. During the said tax year the defendant declared dividends amounting to fifteen per cent upon $500,000, and three per cent upon $750,000. This settlement taxes the defendant's capital in Pennsylvania under the revenue acts of June 7, 1879, P. L. 112, and June 1, 1889, P. L. 420, and includes therein the said sum of $250,000. The commonwealth's claim is $3,617.14, of which amount the defendant has paid to the state treasurer $3,242.14, leaving in dispute the sum of $375, tax at the rate of one and one half mills upon the said $250,000.[2]

4. The stock thus issued to the American Bell Telephone Co. was in payment for a license to use the patents now owned or hereafter to be owned by said telephone company, during a period of ninety years from August 23, 1889. Without this license, the defendant could not use the telephones connected with its plant or carry on its corporate business.[3]

5. We find as a fact that said license was fairly worth the price paid for it, and in 1889 constituted in actual value not less than one third of all the property and assets represented by the defendant's capital stock. The rest of said capital stock is invested in poles, wires, bells, switches and apparatus necessary to operate telephone exchanges, to the value of $700,000, and in real estate to the value of $150,000; but the value of the telephone plant is largely dependent upon the right to use said patents, and without this right it would not exceed about $250,000. The defendant does not own the telephones which

Decision of Court below.

it uses, but rents the same from the American Bell Telephone Co., paying an annual royalty on each instrument.[4]

CONCLUSION OF LAW.

Agreements similar to the one above referred to were construed by the Supreme Court in Commonwealth v. Telephone Co., 129 Pa. 217, and were there held to constitute a leasing of patented telephones to Pennsylvania corporations, with a license to use the same. Following this construction, the question now involved appears to be whether capital stock of a domestic corporation invested in such a license is taxable by the state. We have already decided this question in Commonwealth v. Gas Imp. Co., 7 Pa. C. C. R. 116 ; Commonwealth v. Brush Elec. Light Co.,* Nos. 195 September Term 1889, and 443 September Term, 1890, and in several other cases which we need not specify. Without further discussion, therefore, we refer to the opinions filed in the cases named, for the reasoning which supports the following conclusion :

1. Defendant is not taxable upon so much of its capital stock, $250,000, as is invested in the license or right to use the patents above referred to ; and the settlement appealed from is erroneous, so far as it taxes said portion of the defendant's capital stock.[5]

The prothonotary is directed to enter judgment for the defendant, if exceptions are not filed according to law.

—By the contract of November 28, 1879, mentioned in the findings of fact, the National Bell Telephone Company (now called the American Bell Telephone Company), licensed the defendant company "to use and to let for use telephones manufactured under the patents granted to Alexander Graham Bell," or under any other patents then held or thereafter to be held by the licensor, within certain specified territory, for a period of ten years from August 23, 1879, and a further period as thereinafter specified, agreeing not to license any other parties to use or let for use telephones or telephonic apparatus in said territory during the continuance of the agreement, with certain exceptions. The agreement provided further, inter alia, that the defendant should not sell or assign the contract, or any of its property, lines or equipment, without the written

---

* See Commonwealth v. Elec. Light Co., post, 147.

Arguments.

assent of the licensor; that all the telephones required by the defendant should be furnished to it by the licensor at "the regular rentals," less certain discounts, and the defendant should not be interested, directly or indirectly, in the use or leasing of telephones of any kind, except those manufactured and supplied by the licensor; that the defendant should not lease telephones at other rates than those fixed from time to time by the licensor, and in the conduct of its business should comply with such instructions as the latter might from time to time give. The stipulation for an extension of the license, above referred to, was in the following words:

"17. And it is further hereby expressly covenanted and agreed, by and between the parties hereto, that at the expiration of the ten years herein limited as the life of this contract, said party of the second part shall, in such manner as may be in accordance with law, increase its capital stock to the extent of fifty per cent, and shall issue and deliver such increase to said party of the first part, who, in return shall, in consideration therefor, extend this agreement for the further period of ninety years from said date."

—To the foregoing decision, the commonwealth filed exceptions, alleging that the court erred:

1–4. In the findings of fact.[1 to 4]

5. In the conclusion of law.[5]

6. In not entering judgment for the full amount of the commonwealth's claim.[6]

After argument thereof, the court, McPHERSON, J., on April 2, 1891, entered an order overruling said exceptions and directing judgment to be entered in accordance with said decision. Thereupon, the commonwealth took this appeal, specifying that the court erred:

1–6. In overruling the commonwealth's exceptions.[1 to 6]

*Mr. Jas. A. Stranahan*, Deputy Attorney General, (with him *Mr. W. U. Hensel*, Attorney General,) for the Commonwealth, appellant:

The agreement between the Bell Telephone Company and the defendant does not transfer to the latter any interest in any invention, discovery, or patent. It gives only the right to use articles manufactured by the former, and the only con-

sideration therefor is a rental. If the use of telephones and telephonic apparatus was what passed by the contract, the capital stock given therefor is a proper subject of taxation: Patterson v. Kentucky, 97 U. S. 501; Webber v. Virginia, 103 U. S. 344; People v. Telephone Co., 29 Am. & Eng. Corp. Cas. 616; Commonwealth v. Telephone Co., 129 Pa. 217.

*Mr. M. E. Olmsted,* for the appellee :

1. The question raised in this case does not relate to the annual rentals paid for the telephones, but to the $250,000 paid for the right or license to use them under the Bell patents. A tax on capital stock is a tax upon the company's property and assets: Commonwealth v. Standard Oil Co., 101 Pa. 119. Therefore, a tax upon capital invested in the license granted to the defendant, is a tax upon the license itself: Commonwealth v. Mining Co., 5 Pa. C. C. R. 91, note. That license is an interest in the patents: Curtis on Patents, 4th ed., XIX., XXII., XXIII. All that was decided in Patterson v. Kentucky, 97 U. S. 501, relied on by the commonwealth, was that the use of a patented article so as to injure or endanger others, might be restrained under the police power of the state. No such question arises in the case at bar. Nor is the tax in controversy imposed upon the patented article. The telephones themselves do not belong to the defendant, but are the property of the Bell company. It is the defendant's incorporeal right to exercise within certain territory the exclusive privilege granted by these patents, that is sought to be taxed.

2. Such a right cannot be taxed by the state governments : Webber v. Virginia, 103 U. S. 344; McCulloch v. Maryland, 4 Wheat. 316; California v. Railroad Co., 127 U. S. 1; Commonwealth v. Gas Imp. Co., 7 Pa. C. C. R. 116. It is not ordinarily practicable for the patentee himself to exercise his exclusive privilege in all parts of the union. It is customary to license others to enjoy the privilege under him, and it is in the right so to license others that the value of his patent consists. If the states can tax such licenses at all, they can render the patent valueless. The cases of People v. Telephone Co., 29 Am. & Eng. Corp. Cas. 616, and Commonwealth v. Telephone Co., 129 Pa. 217, decide no more than that, as the American Bell Telephone Co. is not doing business either

Opinion of the Court.

in New York or Pennsylvania, it is not within the terms of the statutes of those states taxing foreign corporations doing business within their respective jurisdictions.

OPINION, MR. JUSTICE WILLIAMS:

This case was tried without a jury, and the facts appear fully in the findings of the learned trial judge. From these we learn that the American Bell Telephone Company is a Massachusetts corporation, owning the patents under which the instruments for transmitting or reproducing sound are made, and controlling absolutely the manufacture and use of them. It does not sell any interest in the patent, or any territory, or even a single instrument made by it; but, by leasing the instruments for a term of years at a rental, it maintains its exclusive ownership and control over this mode of communicating messages, and levies such exactions upon the public as it pleases. Having no office and doing no business in this state, it escapes taxation altogether: Commonwealth v. Telephone Co., 129 Pa. 217. The mode of doing business in this state is by the organization of subordinate companies, which erect the poles, put the wires upon them, build or rent offices and exchanges, and fit them out with all the appliances necessary, except the instruments manufactured by the Massachusetts company. These are leased, to be used only within a certain district, and by the subordinate company or its customers. The appellee, the Central District & Printing Telegraph Company, is one of these subordinate companies. It is doing business in this state, under the authority of a charter granted here. Its business is the transmission of messages over its lines. It owns the entire plant used in its business, or has an exclusive control of it under a lease, and its system covers about fifty contiguous counties in Pennsylvania, West Virginia, and Ohio. The instruments used by customers, and at the several offices or exchanges, are the property of the Massachusetts company. The appellee has no ownership in them. It cannot make them. It cannot sell them. It cannot use them outside the enumerated counties. It cannot so much as control the price that shall be charged for the use of them by their customers. The state has levied a tax upon the capital stock of the appellee. This was originally $500,000, but the contract with the Massachusetts company re-

quired it to issue, at the end of ten years, a quarter of a million of dollars of additional stock, and deliver the same to that company. This has been done. The contention of the appellee, which was sustained in the court below, is that the stock issued in pursuance of the contract to the Massachusetts company is not liable to this tax, because it is invested in patent rights.

Our first question is, what is a patent right? We reply, negatively, that it is not the article or machine made under the letters patent. That is the property of the maker, in the same way and with the same attributes that any other article made or grown by him is his property. The only difference is that, while unpatented articles made by him may be imitated by others, this may not be, so long as the letters patent are in force, without his license or consent. The article so made is the fruit of the combination or appliance that has been patented, but is not the patent right. It will be best to adopt in this connection the exact words of the Supreme Court of the United States, in Patterson v. Kentucky, 97 U. S. 501: "The right of property in the physical substance which is the fruit of the discovery, is altogether distinct from the right in the discovery itself; just as the property in the instruments or plate by which copies of a map are multiplied, is distinct from the copyright of the map itself." In support of this proposition, the case of Stephens v. Cady, 14 How. 528, was cited. Answering affirmatively, I would say that a "patent right" is the right, protected by letters patent, to use the process, combination, or appliance, discovered by the patentee, for the production of a certain result. It is an incorporeal right, conferred by the government, by way of encouragement to, and as compensation for the employment of time and labor and money in the discovery of new and useful things, to minister to the comfort and aid in the progress of the public. So long as the given result can be reached only by means of the process, combination, or appliance covered by the letters patent, the patentee has an exclusive control of the result. When some other inventor reaches the same result by another and better process discovered by him, he is not interfered with by the letters patent to his predecessor, so long as he does not infringe upon the invention they cover, but may, by the use of his own superior methods, supersede it and drive it from the market. An inventor, by an

ingenious combination of wheels, levers, knives and bars, produces a mowing machine, and obtains a patent therefor.   This does not interfere with the cutting of grass or grain in any other way, nor with the use of mowing machines that do not employ the peculiar process, combination, or appliance covered by the patent.   The patent, therefore, gives to the inventor no control over the result, the cutting of grass or grain, except in so far as it is sought to be done by the use of his device.   It gives him no control over the instruments by which the cutting is done, except they employ the particular process, combination, or appliance to which he, as the inventor, has the exclusive right.   This right, which is his by discovery, and which has been protected by the act of the government in forbidding others to employ it without his consent, is the "patent right."

Our next question is whether the appellee has invested any portion of its stock in the patent rights under which the Bell telephone instruments are manufactured.   This question is fully answered by the contract to which we have already referred.   It will not be pretended that it acquired any interest in the letters patent as owner of a fractional part of the title conferred by them ; nor, as the owner of the right to make and vend in any given subdivision of the territory covered by them ; nor yet, as owner of a single instrument, the fruit of the patent right owned by the Massachusetts company.   It is, as to this part of the plant employed in its business, a lessee.   It hires the manufactured instruments as a farmer might hire a mowing machine, and acquires no more interest in the patent right held by its lessor than would the farmer.   It is quite common for manufacturers to lease instruments made by them under protection of letters patent.   Printing presses, pianos, millgearing, portable saw-mills, and other articles are thus leased ; but it has never been suggested that the lessees became thereby owners of, or investors in, the patent rights under which the articles in their possession were made.   On the other hand, those articles remain the property of the lessors, who part with nothing but the possession, for which they are paid the agreed rent, or in default of such payment they take the article from the lessee, and resume possession by virtue of their absolute ownership.   It is not important to inquire whether the stock issued to the Massachusetts company was a bonus or

a method of securing an additional rent, since it is not pretended the appellee received any consideration for it beyond that which appears in the contract, which was the right to use manufactured instruments as a lessee. This was therefore not an investment in the patent rights, but in manufactured instruments and appliances made under the protection of the patents. The first is an incorporeal right, which the owners refuse to sell, in whole or in part. The other is its corporeal embodiment in a manufactured article, prepared for market; or, in the language of the Supreme Court of the United States, its "fruit." The first is the right of the inventor to the "child of his brain." The other is the personal property of the maker, wrought into shape for the market by his hands, and distinguished from other personal property only in this, that the process of manufacture is protected by the letters patent.

But let us look at the practical operation of the rule laid down in the court below. We will suppose, for this purpose, that the corporation owning the rights secured by letters patent is a Pennsylvania corporation, and that its capital stock, to the amount of one million dollars, is invested in the patents. This would be exempt from taxation by the state, because invested in incorporeal rights secured by the grant of the government of the United States, and evidenced by letters patent. We will suppose, further, that our corporation, like the Massachusetts corporation in this case, retains an exclusive control over the manufacture of the instruments to which its patents relate, and produces them in great numbers. Within the state, we will suppose there are ten local companies, like that now before us, with their wires, stations, and exchanges, ready to enter upon the business of transmitting messages by telephone, with a capital stock, like that of the Central, of seven hundred and fifty thousand dollars each. They apply to our corporation for several thousands of its manufactured instruments with which to complete their plants and enter upon their business, and are told that the instruments are not for sale, but can be had only at a rental, amounting to several times their value, annually. They accordingly take, upon lease, the machines they need, and pay, as in this case, in addition to an annual rental in cash, one third of their capital stock in a block, as a bonus, or as an additional rent. Our corporation now owns

two million five hundred thousand dollars of the stock of the local companies, which represents the use or rent of its manufactured goods. If the stocks are also exempt, then, on an actual investment of one million dollars in patents, we have three million five hundred thousand dollars of stock exempt from taxation. The same rule, applied in the other states, might result in the exemption throughout the country of fifty million dollars or one hundred million dollars of stock from state taxation, on an actual investment in patents of but one million dollars.

The trouble with this rule is that it overlooks the distinction between the incorporeal right secured by letters patent, and the tangible commodity or finished product which is its fruit. This finished product, or fruit of the right secured by letters patent, is merchandise, whether it takes the form of a patent reaper, a power printing press, a fountain pen, a pencil sharpener, or an instrument called a telephone. If the manufacturer sells his product, the right to use it is an implied term of the contract of sale. If he leases it, the same is true. Whether he sells or leases, he deals, not in a patent right, but in manufactured goods. The buyer or lessee gets no right under the letters patent, except that which follows as a necessary incident from his purchase or hiring, viz., the right to use the article bought or hired, without other liability than that which his contract provides for. We are clearly of the opinion that the stock paid the Massachusetts company, under the contract by which the defendant company secured the telephonic instruments needed in its business, was not an investment in patent rights, but in instruments that enter into and form part of its plant, as truly as the poles, or wires, or switch boards used by it.

> The judgment is therefore reversed, and judgment is now entered in favor of the commonwealth for the balance of the tax as adjusted by the taxing officers of the commonwealth, with interest and costs.
>
> Bal. of tax on capital stock,    .    . $375.00
> Interest at twelve per cent   .    .
> Attorney general's commission.      .
>
>      Total    .    .    .    .    .    .