Opinion by
Orlady, J.,
The plaintiff leased to one C. B. Hall, five patented machines to be used by him in the making and repairing of boots and shoes; among the conditions being “the leased machinery shall at all times remain and be the sole and exclusive property of the- lessor, and the lessee shall have no right of property therein but only the right to use the same upon the conditions therein contained. The leased machinery shall be used only by the lessee himself or by operatives in his direct employ and only in *90 the factory occupied by him at Scranton, Pennsylvania. The leased machinery shall not be transferred or delivered or sublet to any other person or corporation and neither the lease nor the license granted can be assigned by the lessee by his own act or by operation of law. If C. B. Hall become insolvent or bankrupt or has a receiving order made against him, or makes or executes any bill of sale, deed of trust, or assignment for the benefit of his creditors, or if a sale or lease or removal of the leased machinery or any part thereof, without the written consent of the lessor, be made or attempted, or if any distress or execution or attachment of any part thereof without the written consent in writing of the lessor, be made or attempted, or if any distress or execution or attachment be levied thereon, then and in each such case, the lease and license between the lessor and lessee shall, at the option of the lessor, cease and determine, and the possession of and full right to and control of all the leased machinery shall thereupon revest in the lessor free of all claims and demands whatsoever.”
The business of Hall was conducted in a building owned by A. D. Dean, under a lease from Dean to him at a stipulated rental. In January, 1903, while Hall was in possession 'of these machines, and in default in payment of royalty on the machinery he became bankrupt, and notified his lessor of the fact. The lessor, the plaintiff herein, gave Hall notice in writing of the cancellation of the lease and made a demand for the delivery of the machines to the company.
In April following the defendant issued a landlord’s warrant for rent in arrear from Hall, and distrained these machines. The plaintiff gave prompt notice of its claim of title and at the sale of the tenant’s property these machines were purchased by the defendant (the landlord) whereupon the plaintiff issued a writ of replevin against the defendant for the machinery, fixing its value at $183, and it was delivered to the plaintiff. The action proceeded before a referee under the Act of April 6, 1869, P, L. 725, *91 and after a report by the referee and a hearing on an exception thereto resulted in a judgment in favor of the defendant for the value of the property at the time it was replevined — to wit — $183, and damages for detention from that date, in all $276.33.
The principal contention in the case is in regard to the value of these machines at the time they were replevined by the plaintiff. The plaintiff urges that as they were patented articles under lease to Hall on certain conditions, that his only title to them was for their use upon payment of the royalty reserved in the lease; that upon his default in such payment by his becoming a bankrupt, and on notice from the lessor of cancellation of the lease, his right to use them then and there ended, and that the purchaser at the landlord’s sale secured no higher right, but merely the right to their physical possession without any right to use them for the purposes of their construction — and further, that they had no market value as patented machines but merely as junk, or the value of the material in them.
The defendant contends that by the sale he acquired the right to use the machines and that such right would add materially to their value. On this branch of the case the testimony is very meager — they were considered by both parties as secondhand machines which had no market price unless accompanied by the consent of the plaintiff to use them. They had a special value to the plaintiff for the reason that it alone had control of the patented right to license their use, and if returned by the lessee to the lessor they would have a book value of a certain sum as a cancellation allowance depending upon their condition. The referee found as a fact that their value was as stated above.
Under authority of Ball v. Coker, 168 Fed. Repr. 304; Heaton-Peninsular Button Fastener Co. v. Specialty Co., 77 Fed. Repr. 288; Edison Phonograph Co. v. Pike, 116 Fed. Repr. 863; Com. v. Central Dist. & Printing Telegraph Co., 145 Pa. 121, we must hold that the right to *92 use these machines was exclusively in the plaintiff and did not pass to the purchaser at the landlord’s sale. The right is defined by many authorities to be the right protected by letters patent, to use the process, combination or appliance, discovered by the patentee, for the production of a certain result. It is an incorporeal right, conferred by the government, by way of encouragement to, and as a compensation for the employment of time and labor and money in the discovery of new and useful things, to minister to the comfort and aid in the progress of the public. So long as the given result can be reached by means of the process, combination, or appliance covered by the letters patent, the patentee has the exclusive control of the result.
Under the facts of this case all right of Hall in these machines was terminated in January, 1903, when the lease was canceled in accordance with its terms, and from that date forward the plaintiff has withheld its consent to their further use.
There is a plain distinction between the grant of the right to make and vend a machine and the grant of the right to use it — as shown in Bloomer v. McQuewan, 55 U. S. 539; Morgan Envelope Co. v. Paper Co., 152 U. S. 425.
The judgment is affirmed.