### JAMES STEPHENS, APPELLANT, v. ISAAC H. CADY.

Where the copy-right of a map was taken out under the act of Congress, and the copperplate engraving seized and sold under an execution, the purchaser did not acquire the right to strike off and sell copies of the map.

The court below decided that an injunction to prevent such striking off and selling, could not issue, without a return of the purchase-money. This decision was erroneous.

A copy-right is a "property in notion, and has no corporeal tangible substance," and

Stephens *v.* Cady.

is not the subject of seizure and sale by execution. It can be reached by a credit-or's bill ·in chancery, but in such case, the court would probably have to decree a transfer in the mode pointed out in the act of Congress.

THIS was an appeal from the Circuit Court of the United States for the District of Rhode Island, sitting as a Court of Equity.

The facts are stated in the opinion of the court.

It was submitted· on printed argument by the appellant, in proper person. No counsel appeared for the appellee.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from the Circuit Court of the United States for the District of Rhode Island.

The bill was filed by the appellant in the court below, to re-strain the defendant from printing and publishing a map of the State of Rhode Island and Providence Plantations, in violation of the complainant's copy-right.

The facts are briefly these: The complainant, on the 23d of April, 1831, took out the copy-right of a map, the title of which is as follows: "A Topographical Map of the State of Rhode ·Island and· Providence Plantations, surveyed trigonometrically and in detail, by James Stephens, topographer and civil engi-neer, Newport, R. I., 1831, the right whereof he claims as au-thor, in conformity with the act of Congress, entitled an act to amend the several acts respecting copy·rights," and since then has been engaged in printing, publishing, and vending the said maps, by virtue of the copy-right thus obtained. In March, 1846, a judgment was recovered against him, in the Common Pleas of Bristol county, Massachusetts, for $194.23, upon which an execution was issued, and the copperplate engraving of the map in question seized, and sold, and bid off by the defendant for the sum of $245, he being the highest bidder. Having thus become entitled to the property in the engraving, he claimed the right to print and publish the maps, and in pursuance of this supposed right, he has been engaged in printing, publishing and vending the same.

On the hearing upon the bill, answer, and proofs, the court below differed in opinion, as to the effect of the sale of the cop-perplate engraving of the map; but agreed that no injunction could issue without a repayment of the purchase-money, which was refused by the complainant; whereupon the court dismissed the ·bill with costs.

The single question in the case is, whether or not the property acquired by the defendant in the copperplate, at the sheriff's sale, carried with it, as an incident, the right to print and publish the map engraved upon its face.

Upon this question the court below divided in opinion, but finally agreed in dismissing the bill.

The appellee has not followed the case into this court, and we have not, therefore, been favored with the grounds and reasons relied on for sustaining the decree; nor have we been furnished with the reasons of the court for the same. The ground upon which the decision was ultimately placed, namely, the refusal of the complainant to refund the purchase-money, is certainly not satisfactory; for if the copy-right of the map, or any right to print or publish the same, passed with the purchase of the plate, as incidental, as there is nothing in the facts of the case to invalidate the sale, the title became complete in the purchaser, and could not be rightfully interfered with. But if otherwise, then there was no ground for imposing the repayment of the purchase-money, as a condition to the relief prayed for; the injunction should have been awarded, and the defendant directed to account.

But from the consideration we have given to the case, we are satisfied that the property acquired by the sale in the engraved plate, and the copy-right of the map secured to the author under the act of Congress, are altogether different and independent of each other, and have no necessary connection. The copy-right is an exclusive right to the multiplication of the copies, for the benefit of the author or his assigns, disconnected from the plate, or any other physical existence. It is an incorporeal right to print and publish the map, or, as said by Lord Mansfield in Millar v. Taylor (4 Burr. 2396,) "a property in notion, and has no corporeal tangible substance."

The engraved plate and the press are the mechanical instruments, or means by which the copies are multiplied, as the types and press are the instruments by which the copies of a book are produced. And to say that the right to print and publish the copies, adheres to and passes with the means by which they are produced, would be saying, in effect, that the exclusive right to make any given work of art necessarily belonged to the person who happened to become the owner of the tools with which it was made; and that if the defendant in this case had purchased the stereotyped plates of a book, instead of the engraved plate, he would have been entitled to the copy-right of the work, or at least, to the right to print, publish, and vend it; and yet, we suppose that the statement of any such pretension is so extravagant as to require no argument to refute it. Even the transfer of the manuscript of a book will not, at common law, carry with it a right to print and publish the work, without the express consent of the author, as the property in the manuscript, and the right to multiply the copies, are two separate and

distinct interests. 4 Burr. 2330, 2396 ; 2 Eden, R. 329 ; 2 Atkyns, R. 342 ; 2 Story, R. 100.

Lord Mansfield observed, in Millar v. Taylor, that " no disposition, no transfer of paper upon which the composition is written, marked, or impressed, (though it gives the power to print and publish,) can be construed a conveyance of the copy, (by which he means copy-right, as appears from a previous part of his opinion,) without the author's express consent ' to print and publish,' much less against his will."

. Now, it seems to us, that the transfer of the manuscript of a book by the author would, of itself, furnish a much stronger argument for the inference of a conveyance of the right to multiply copies, than exists in the case of a transfer of the plate in question, or of the stereotype plates, as the ideas and sentiments, or in other words, the composition and substance of the work, is thereby transferred. But the property in the copy-right is regarded as a different and distinct right, wholly detached from the manuscript, or any other physical existence, and will not pass with the manuscript unless included by express words in the transfer.

The copperplate engraving, like any other tangible personal property, is the subject of seizure and sale, on execution, and the title passes to the purchaser, the same as if made at a private sale. But the incorporeal right, secured by the statute to the author, to multiply copies of the map, by the use of the plate, being intangible, and resting altogether in grant, is not the subject of seizure or sale by means of this process — certainly not at common law. No doubt the property may be reached by a creditor's bill, and be applied to the payment of the debts of the author, the same as stock of the debtor is reached and applied, the court compelling a transfer and sale of the stock for the benefit of the creditors. 20 J. R. 554 ; 5 J. Ch. 280 ; S. C. 4 Id. 687 ; 1 Paige, 637. But in case of such remedy, we suppose, it would be necessary for the court to compel a transfer to the purchaser, in conformity with the requirements of the copy-right act, in order to invest him with a complete title to the property. The first section of that act provides, that the author of any map, chart, &c., his executors, administrators, or legal assigns, shall have the sole right of printing, publishing, and vending the same, during the period for which the copy-right has been secured. And the seventh section forbids any person from printing, publishing, or selling the map or chart, under heavy penalties, without the consent of the proprietor of the copy-right, first obtained in writing, signed in the presence of two credible witnesses. Act of Congress, Feb. 3, 1831.

An assignment, therefore, that would vest the assignee with the property of the copy-right, according to the act of Congress, must be in writing, and signed in the presence of two witnesses, and it may, I think, well be doubted whether a transfer even by a sale, under a decree of a court of chancery, would pass the title so as to protect the purchaser, unless by a conveyance, in conformity with this requirement. 6 B. & Cr. 169; 1 Car. & P. 558; R. & M. 187; D. & K. 215.

It is unnecessary, however, to express an opinion upon the point. It is sufficient, for the purposes of this case, to say, that the right in question is wholly independent of, and disconnected from, the engraved plate; and, that there is no foundation for the defence set up, that it passed as appurtenant to the sale and transfer of the property, in the engraved plate, from which the copies of the map were struck off.

For these reasons, we are of opinion that the decree below, must be reversed with costs, and the proceedings remitted, with directions that a decree be entered for the complainant, in conformity with this opinion.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Rhode Island, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to enter a decree therein, in conformity to the opinion of this court.