SECURITY–FIRST NAT. BANK OF LOS ANGELES v. REPUBLIC PICTURES CORP.

No. 12260.

United States District Court
S. D. California, Central Division.
April 26, 1951.

362

Louis E. Swarts, Beverly Hills, Cal., Joseph S. Dubin, University City, Cal., Wild, Carlson & Reeve and David S. Davis, all of Fresno, Cal., for plaintiff.

Loeb & Loeb and Saul N. Rittenberg, all of Los Angeles, Cal., for defendant.

Hugo A. Steinmeyer, Robert H. Fabian and Robert Van Buskirk, all of Los Angeles, Cal., for Bank of America Nat. Trust & Savings Ass'n, amici curiæ.

YANKWICH, District Judge.

Plaintiff, a national banking association authorized to do business in California, was the mortgagee under a chattel mortgage, dated October 2, 1944, executed by Pre-Em Pictures, Inc., a California corporation, to secure the repayment of a loan of $35,-000.00 and advances made to Pre-Em to plaintiff.

The mortgage covered, among other items of personal property, all copyrights on the story, treatment, script, continuity and manuscript composition of the motion picture photoplay, entitled "A Song For Miss Julie", together with the right to copyright and all rights to renew and extend the copyright. The photoplay was produced by Pre-Em and distributed by the defendant, a New York corporation qualified to transact business in the State of California, and engaged in the business of distributing, leasing and licensing motion pictures and photoplays throughout the United States and the World. Pre-Em defaulted in the repayment of the loans and advances secured by the chattel mortgage. On September 20, 1948, the plaintiff instituted a foreclosure proceeding against Pre-Em and others in the United States District Court. On August 13, 1949, the Court rendered a decree of foreclosure in favor of the plaintiff which has become final. Under this decree, the United States Marshal for the Southern District of California sold the property at public auction, on October 5, 1949, to the plaintiff for the sum of $5000.00, and issued to the plaintiff a certificate of sale on foreclosure, which was duly recorded in the Copyright Office of the United States.

Controversy has arisen between the plaintiff and the defendant as to the rights acquired by the plaintiff under the foreclosure. It is the contention of the plaintiff that they acquired all the rights of Pre-Em in the property covered by the chattel mortgage, *including the right to the copyright of the story*. These contentions are asserted in an action for declaratory relief instituted on September 11, 1950.[1] The defendant, in an Answer filed on October 18, 1950, challenges the jurisdiction of this court to foreclose the chattel mortgage as to the copyright. The evidence before the court shows, without dispute, the foregoing facts, also that the jurisdictional minimum is involved in the controversy. The sole question for determination is whether the district court had jurisdiction to foreclose the copyright itself, under Section 1338(a) of Title 28 U.S.C.A.

## I
### Cases Arising Under Federal Law

Concededly, there is no *binding* precedent dealing with the problem. So the approach must consider both the nature of the jurisdiction of the federal courts and the nature of copyright. We start with the premise that federal courts are courts of limited jurisdiction.[2] And jurisdiction to entertain the foreclosure of a mortgage of a copyright, if it exists at all, must de-

1. 28 U.S.C.A. §§ 2201–2202.

2. Yankwich, Jurisdiction and Procedure of the Federal District Courts, 1941, 1 F.R.D. 453, 456; Yankwich, Jurisdiction of Federal Courts, 1947, 6 F.R.D. 507, 508. And see, Bors v. Preston, 1888, 111 U.S. 252, 255, 4 S.Ct. 407, 28 L.Ed. 419; Matson Navigation Co. v. United States, 1932, 284 U.S. 352, 359, 52 S.Ct. 162, 76 L.Ed. 336.

rive either from Section 1338(a), which provides, in effect, that the district court has original jurisdiction of actions arising under acts of Congress relating to patents, copyrights and trademarks [3], or under what is known as the "federal question" statute, which provides for jurisdiction in cases, which, in addition to satisfying the jurisdictional minimum, also arise under "the Constitution, laws or treaties of the United States." [4]

The conditions which confer jurisdiction under either statute are the same, except that in cases arising "under the Constitution, laws and treaties of the United States", the jurisdictional minimum must also be present, while in those arising under congressional acts relating to patents, copyrights and trademarks, the jurisdictional minimum need not be present. But as to both, the criterion by which it is determined whether they arise under the particular law so as to give the federal courts jurisdiction is the same.

Indeed, the language in which the courts have couched the principle has remained unchanged through the years.[5] It is substantially this: A cause is said to arise under the Constitution and laws of the United States when its correct determination depends upon the construction of the Constitution or laws of the United States, or when the right of a party may be sustained by one construction or defeated by another.

Cases decided in recent years have given more accurate criteria for determining the nature and source of rights which give jurisdiction. For the purpose of the present controversy, two statements may furnish the distinguishing marks for determining the matter. The first is by Mr. Justice Stone: "Federal jurisdiction may be invoked to vindicate a right or privilege claimed under a federal statute. It may not be invoked where the right asserted is non-federal, merely because the plaintiff's right to sue is derived from federal law, or because the property involved was obtained under federal statute. The *federal nature* of the right to be established is decisive—*not the source* of the authority to establish it." [6] (Emphasis added).

The other is by Mr. Justice Cardozo: "To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. Starin v. New York, 115 U.S. 248, 257, 6 S.Ct. 28, 29 L.Ed. 388; First National Bank [of Canton, Pa.] v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 374, 64 L.Ed. 690. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another." [7]

The case just cited is a good illustration of the distinction which the courts have in mind. The question before the court was whether an action brought by a state-taxing authority against a national bank could be removed to the federal court. It was argued that the authority of the state to tax the shares of national banks, being derived from a federal statute, the right to remove existed. But the Court held that the right to tax the shares of the national bank was a *state right,* and that the permissive nature of the federal law allowing the tax did not change the right. Recurring to the test laid down in Puerto Rico

3. 28 U.S.C.A. § 1338(a).

4. 28 U.S.C.A. § 1331.

5. Cohens v. Com. of Virginia, 1821, 6 Wheat. 264, 373–379, 5 L.Ed. 257; Osborn v. Bank of United States, 1824, 9 Wheat. 738, 816, 823–825, 6 L.Ed. 204; Macon Grocery Co. v. Atlantic Coast Line Ry. Co., 1910, 215 U.S. 501, 506–507, 30 S.Ct. 184, 54 L.Ed. 300; Hull v. Burr, 1914, 234 U.S. 712, 720, 34 S.Ct. 892, 58 L.Ed. 1587; Gully v. First National Bank, 1936, 299 U.S. 109, 116, 57

S.Ct. 96, 81 L.Ed. 70; Bell v. Hood, 1946, 327 U.S. 678, 685, 66 S.Ct. 773, 90 L.Ed. 939; National Mutual Insurance Co. v. Tidewater Co., 1948, 337 U.S. 582, 597–599, 69 S.Ct. 1173, 93 L.Ed. 1556.

6. Puerto Rico v. Russell & Co., 1933, 288 U.S. 476, 483, 53 S.Ct. 447, 449, 77 L. Ed. 903.

7. Gully v. First National Bank, 1936, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70.

v. Russell & Co.,[8] the Court said: "Here the right to be established is one created by the state. If that is so, it is unimportant that federal consent is the source of state authority. To reach the underlying law we do not travel back so far. By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby. Louisville & Nashville R. Co. v. Mottley, supra, [211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126]. With no greater reason can it be said to arise thereunder because permitted thereby." [9]

In substance, therefore, these cases lay down these principles:

Federal jurisdiction may not be invoked where the right asserted is non-federal merely because (1) the plaintiff's right to sue is derived from federal law, or (2) the property involved was obtained under a federal statute. But these cases say no more than that, in determining whether jurisdiction exists, the decisive test is *the nature* of the right sought to be established and not *the source* of the authority to establish it. The test is,—to use the language of Mr. Justice Stone: "The federal nature of the right to be established".[10] If the object of the action is to "enforce" a right created by a law of the United States, or "to interpret" such law, exclusive jurisdiction is in the federal courts.

## II

### The Nature of Copyright

With this test in mind, the inquiry turns to the question:

What is the nature of the right which the plaintiff sought to be asserted in the foreclosure proceeding?

The answer is: The right to mortgage the copyright.

And that derives from Section 28 of Title 17 U.S.C.A., which reads: "Copyright secured under this title or previous copyright laws of the United States may be assigned, granted, or mortgaged by an instrument in writing signed by the proprietor of the copyright, or may be bequeathed by will."[11]

The entire law of copyright is of statutory origin. The copyright law, as we understand it, is entirely distinct from what has been denominated "the common law copyright", which extended to the manuscript itself before its publication.[12]

The statutory right is, as stated by Lord Mansfield, in 1769, "incorporeal: it relates to ideas detached from any physical substance."[13] In the famous case in which he used these expressions,—the *first* important case in which the question of literary property came before the court of King's Bench in England,—Lord Mansfield stated the deficiencies which attached to the copyright of ideas in a manner which, despite conciseness of statement, has not been equalled for thoroughness:

"I used the word 'copy', in the technical sense in which that name or term has been used for ages, to signify an incorporeal right to the sole printing and publishing of somewhat intellectual, communicated by letters.

"It has all along been expressly admitted, that, by the common law, an author is in-

---

8. Puerto Rico v. Russell & Co., 1933, 288 U.S. 476, 483, 53 S.Ct. 447, 77 L.Ed. 903.

9. Gully v. First National Bank, 1936, 299 U.S. 109, 116, 57 S.Ct. 96, 99; 81 L.Ed. 70. And see, National Mutual Insurance Co. v. Tidewater Co., 1948, 337 U.S. 582, 597–599, 69 S.Ct. 1173, 93 L.Ed. 1556; Teague v. Brotherhood Locomotive Firemen, 1942, 6 Cir., 127 F.2d 53, 55; Rosecrans v. William S. Lozier, Inc., 1944, 8 Cir., 142 F.2d 118, 121; Note, 12 A.L.R.2d 5.

10. Puerto Rico v. Russell & Co., 1933, 288 U.S. 476, 483, 53 S.Ct. 447, 450, 77 L.Ed.

903. See, Peyton v. Ry. Express Agency, 1942, 316 U.S. 350, 353, 62 S.Ct. 1171, 86 L.Ed. 1525.

11. 17 U.S.C.A. § 28.

12. Amdur, Copyright Law and Practice, 1936, Secs. 1–18; White v. Kimmell, 1950, D.C.Cal., 94 F.Supp. 502; Note, Common Law Copyright, 1950, 24 So. Cal.Law Rev., pp. 65–74. And see, Stephens v. Cady, 1852, 55 How. 528, 529, 531, 14 L.Ed. 528.

13. Millar v. Taylor, 1769, 4 Burr 2396; 98 English Reports (reprint) 201.

titled to the copy of his own work until it has been once printed and published by his authority;' and 'that the four cases in Chancery, cited for that purpose, are agreeable to the common law; and the relief was properly given, in consequence of the legal right.'

"The property in the copy, thus abridged, is equally an incorporeal right to print a set of intellectual ideas or modes of thinking, communicated in a set of words and sentences and modes of expression. It is equally detached from the manuscript, or any other physical existence whatsoever.

"The property thus abridged is equally incapable of being violated by a crime indictable. In like manner, it can only be violated by another's printing without the author's consent; which is a civil injury.

"The only remedy is the same; by an action upon the case, for damages, or a bill in equity for a specific relief.

"No action of detinue, trover, or trespass quare vi et armis, can lie; because the copy thus abridged *is equally a property in notion, and has no corporeal tangible substance.*

"No disposition, no transfer of paper upon which the composition is written, marked, or impressed, (though it gives the power to print and publish) can be construed a conveyance of the copy, without the author's express consent 'to print and publish'; much less, against his will.

"The property of the copy, thus narrowed, may equally go down from generation to generation, and possibly continue forever; though neither the author nor his representatives should have any manuscript whatsoever of the work, original duplicate, or transcript."[14]   (Emphasis added.)

■ In one of the early American cases [15], the Supreme Court imbedded into our law some of the distinctions which Lord Mansfield had made between the tangible property in a manuscript and the intangible right to copy it: "The copperplate engraving, like any other tangible personal property, is the subject of seizure and sale, on execution, and the title passes to the purchaser, the same as if made at a private sale. But the incorporeal right, secured by the statute to the author, to multiply copies of the map, by the use of the plate, being intangible, and resting altogether in grant, is not the subject of seizure or sale by means of this process—certainly not at common law."[16]

These distinctions have been maintained ever since.[17]

### III

### Actions Under Copyright Laws

■ It is evident from what precedes that copyright is an intangible right, unknown to common law, the creature of statute and possessing only the characteristics which the statute has endowed it with. With this in mind, we go back to the question of jurisdiction around which the discussion must center.

■ It may be conceded that, as a general rule, actions on contracts relating to copyright which do not call for a construction of copyright laws do not "arise under these laws".[18] But this only means that if parties enter into an ordinary form of contract,—such as a contract for royalties on a copyrighted book, the type of contract

14. Millar v. Taylor, supra, p. 251; And see, Wheaton v. Peters, 1834, 8 Pet. 591, 654, 657–661, 8 L.Ed. 1055; Stevens v. Gladding, 1855, 17 How. 447, 448, 453–454, 15 L.Ed. 155; Ager v. Murray, 1881, 105 U.S. 126, 128–131, 26 L.Ed. 942; Bobbs-Merrill Co. v. Straus, 1908, 210 U.S. 339, 346, 28 S.Ct. 722, 52 L. Ed. 1086; In re Leslie-Judge Co., Inc., 1921, 2 Cir., 272 F. 886; Italiani v. Metro-Goldwyn-Mayer Corp., 1941, 45 Cal.App.2d 464, 114 P.2d 370.

15. Stephens v. Cady, 1852, 14 How. 528, 531, 14 L.Ed. 528.

16. Stephens v. Cady, supra, 14 How. at page 531, 14 L.Ed. 528.

17. See cases in Note 14.

18. Yankwich, Jurisdiction and Procedure of the Federal District Courts, 1941, 1 F.R.D. 453, 456; Starin v. New York, 1885, 115 U.S. 248, 6 S.Ct. 28, 29 L.Ed. 388; Blackburn v. Portland Gold Mining Co., 1900, 175 U.S. 571, 20 S.Ct. 222, 44 L.Ed. 276; Shoshone Mining Co. v. Rutter, 1900, 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864; Shulthis v. McDougal, 1912, 225 U.S. 561, 569–570, 32 S.Ct. 704, 56 L.Ed. 1205.

which is recognized at common law and which would have validity in any jurisdiction, the jurisprudence of which is grounded upon the common law, and a dispute arises as to the rights of the parties, such dispute may be settled by the common law jurisdiction,—the state courts.[19]

Rightly. For in such case, the main function of the court is to determine the contractual rights of the parties as established by their own agreement. The common law norms of jurisprudence are ordinarily sufficient for that purpose. And the interpretation of the copyright laws, even if incidental to the adjudication, is not *of the essence of the action*. But where the contract relates to a right created by the Congress and is of a character which the common law did not recognize,—in other words, to use the phraseology of Mr. Justice Cardozo [20], where the right involved is (1) created by the laws of the United States, and (2) is an essential element of the case, jurisdiction lies in the federal courts.

The point may be illustrated by referring to two leading cases. In the first one[21], it was sought to enjoin the Comptroller of the Currency of the United States, from doing certain acts under color of his office which were declared to be unlawful, arbitrary, and oppressive. The trial court had dismissed the action on the ground that the acts alleged were not within the purview of the Judicial Code as it then stood[22], as to which actions might be brought in

any district court other than the district of the residence of the defendant. But the Court held otherwise, saying: "Clearly the plaintiff's bill discloses a case wherein its right to recover turns on the construction and application of the National Banking Law; and we think the proceeding is one to enjoin the Comptroller under provisions of that law within the true intendment of the Judicial Code."[23]

In the second case[24], the action was brought by a school district against a county in the State of Washington to require it to account for moneys derived from the forest reserves within the State—moneys which, under an act of the Congress, had been turned over to the State. A local statute[25] directed the State Treasurer to turn over to the County Treasurers the amounts belonging to the respective counties and authorized the County Commissioners of the County to which the money was distributed to expend the money for the public schools and public roads and "not otherwise". Here, if at all, was a case where it might be said that the only question before the court was whether certain public officials, who had been entrusted with moneys which originally came to them under an act of the Congress of the United States, were required to account for it. It could readily be argued that the question before the court was whether they had expended the money as directed by state law. Nevertheless, the Supreme Court held that the District Court had

19. 21 C.J.S., Courts, § 526, pp. 805–806; Odell v. F. C. Farnsworth Co., 1919, 250 U.S. 501, 39 S.Ct. 516, 63 L.Ed. 1111; Becher v. Contoure Laboratories, 1929, 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752; Pendleton v. Ferguson, 1940, 15 Cal.2d 319, 101 P.2d 81, 688; Laning v. National Ribbon & Carbon Paper Co., 1942, 7 Cir., 125 F.2d 565; Seagren v. Smith, 1944, 63 Cal.App.2d 733, 147 P.2d 682; Wells v. Universal Pictures, 1948, 2 Cir., 166 F.2d 690; Jordine v. Walling, 1950, 3 Cir., 185 F.2d 662. And see the writer's opinion in Bettis v. Patterson-Ballagh Corp, Ltd., 1936, D.C.Cal., 16 F.Supp. 455.

20. Gully v. First National Bank, 1936, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70.

21. First National Bank v. Williams, 1920, 257 U.S. 504, 40 S.Ct. 372, 64 L.Ed. 690.

22. Judicial Code, Secs. 24–29, now, 28 U.S.C.A. § 1331 et seq.

23. First National Bank v. Williams, supra, 252 U.S. at page 515, 40 S.Ct. at page 374, 64 L.Ed. 690.

24. King County v. Seattle School District, 1923, 263 U.S. 361, 44 S.Ct. 127, 68 L.Ed. 339.

25. Washington Laws of 1907, Ch. 185, p. 406.

jurisdiction for the reason that the accounting naturally called into question the correctness of the expenditures, and these, in turn, depended—to use a vulgarism—upon what, if any, strings the Congress of the United States had attached to the expenditures. And this, despite the fact that the statute of Washington which turned the money over to the local authorities specifically provided that it be spent for school and road purposes only. So the Court said: "Section 24 of the Judicial Code provides that the District Courts shall have original jurisdiction where the matter in controversy arises under the laws of the United States. In this case the right and *title set up by the appellee depends upon the act of Congress*. There is involved the question whether that act permits the money so received by the county to be expended by the county commissioners as directed by state legislation, or requires an equal distribution annually for the benefit of public schools and public roads of the county. Appellee contended for the latter construction, and the courts below sustained its claim. If this is not a correct construction of the act, appellee has no cause of action. See Northern Pacific Ry. Co. v. Soderberg, 188 U.S. 526, 528, 23 S.Ct. 365, 47 L.Ed. 575; Shulthis v. Mc-Dougal, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205. The District Court had jurisdiction."[26] (Emphasis added.)

The emphasis in these cases upon the creation of a right is based upon a distinction which runs through our jurisprudence and which resorts to the creation of the statute as a means for determining whether the law of the forum or the law of the contract shall apply, or whether a defense of limitation goes to the right created. If the statute be one of creation,—that is, if it creates a right not recognized at common law,—the right of action itself is extinguished at the end of the period of limitation.[27] And with reference to rights which the Congress of the United States creates, it is very careful to see that a right of enforcement is made a concomitant of their creation. And if, through legislative omission, a right of enforcement is not provided in a specific statute, the courts will not hesitate to resort to general jurisdiction to recapture the right. As said by Mr. Justice Douglas: "If the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a right which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control."[28]

## IV

### The Inadequacy of State Remedies

The bearing of what has just been said upon the problem before us is this: The copyright is a creature of the Congress pursuant to constitutional mandate.[29] It is a species of property not recognized by common law. It is intangible in nature. It is distinct from the product itself to which it attaches. It does not exist in any particular state. It is coextensive with the United States, and, as said in a leading case, which we have just summarized, "There is nothing in any act of congress, or in the nature of the rights themselves, to give them locality anywhere, so as to subject them to the process of courts having jurisdiction limited by the lines of states and districts."[30]

In a later case, the Supreme Court recognized the difficulties of which Mr. Justice Curtis spoke in the case just cited, and, while holding that a court of equity could,

26. King County v. Seattle School District, supra, 263 U.S. at page 363, 44 S. Ct. at page 127, 68 L.Ed. 339.

27. Mid-State Horticultural Co. v. Pennsylvania Ry. Co., 1943, 320 U.S. 356, 358–359, 64 S.Ct. 128, 88 L.Ed. 96, and cases cited in Notes 4 and 5; And see, Davis v. Mills, 1904, 194 U.S. 451, 454, 24 S. Ct. 692, 48 L.Ed. 1067; See, also, the writer's opinion in Adams v. Albany, 1948, D.C.Cal., 80 F.Supp. 876, 880.

28. Switchmen's Union of North America v. National Mediation Board, 1923, 320 U.S. 297, 300, 64 S.Ct. 95, 97, 88 L.Ed. 61.

29. United States Constitution, Article I, Sec. 8.

30. Stevens v. Gladding, 1854, 17 How. 447, 451, 15 L.Ed. 155.

368

by a decree *in personam,* achieve results which a levy would not, conceded the intangible character of the right, saying: "The difficulties of which the learned justice here speaks are of seizing and selling a patent or copyright upon an execution at law, which is ordinarily levied only upon property, or the rents and profits of property, that has itself a visible and tangible existence within the jurisdiction of the court and the precinct of the officer; and do not attend decrees of a court of equity which are *in personam,* and may be enforced in all cases where the person is within its jurisdiction."[31]

■ A right of this character could not be the subject of a chattel mortgage at common law. For, at the common law, the chattel mortgage was not considered a lien on the property but a transfer of title to the property conditioned upon subsequent defeasance by complying with the condition of the chattel mortgage.[32] And as a copyright does not attach to the copyrightable object, but is distinct from it, the right was too ephemeral to be the object of possession and transfer. Evidently, with these considerations in mind, the Congress of the United States specifically provided that copyright shall be the subject of mortgage.[33] The Court of Appeals for the Second Circuit, interpreting this statutory enactment, has held that copyrights *"can be mortgaged only under the federal copyright law."*[34] This ruling accords with the principles governing copyright which we have discussed, and correctly interprets the nature of copyright. In choosing to follow it, we may disregard the inference

in the opinion that the conclusion may have been induced, in part, at least, by the fact that New York State law did not authorize the chattel mortgage of intangibles.

■ I am also of the view that copyrights cannot be mortgaged under the law of California[35]. But, assuming that they can, or that such mortgages are valid between the parties[36], foreclosure under California law would, in the case of a copyright of a motion picture, carry nothing more than the right to the physical possession of the property to which the copyright attaches, that is, *the film.*[37]

The decree of the state court would not insure a merchantable title, co-extensive with the territorial limits of the United States. And, as already appears, this is of the very essence of copyright.[38] But, even if no doubt existed as to the right to foreclose a copyright under state law, there is no reason why the federal courts should surrender the enforcement of a right of congressional creation to the diversified jurisdictions of the state courts.

■ Allusion has already been made to the judicial policy which commands that when the Congress fails to give to the federal courts specifically jurisdiction to enforce a congressionally created right, resort is to be had to the grant of general jurisdiction in order to insure its enforcement by the federal courts.

A situation such as confronts us here calls more readily for the application of this policy. For neither the measure of the remedy, nor the scope of the decree, nor yet the facilities for enforcing it

31. Ager v. Murray, 1881, 105 U.S. 130–131, 26 L.Ed. 942.

32. 1 Jones on Chattel Mortgages, Bowers Ed., 1933, Sec. 1. And transfer of possession to mortgagee being essential (see, 1 Jones, op. cit., Sec. 176), this could not be accomplished because of the intangible character of the copyright.

33. 17 U.S.C.A. § 28; 18 C.J.S., Copyright and Literary Property, § 84.

34. In re Leslie-Judge Co., 1921, 2 Cir., 272 F. 886, 888. Certiorari having been denied, *it may be assumed* that this ruling, *although not approved,* stands unchallenged.

35. California Civil Code, § 2955.

36. California Civil Code, § 2973; And see, Wolpert v. Gripton, 1931, 213 Cal. 474, 481, 2 P.2d 767; Bank of California v. McCoy, 1937, 23 Cal.App.2d 192, 72 P.2d 923; Mason v. Citizens National Trust & Savings Bank, 1934, 9 Cir., 71 F.2d 246.

37. See, Italiani v. Metro-Goldwyn-Mayer Corp., 1941, 45 Cal.App.2d 464, 114 P.2d 370; and cases cited in Note 14.

38. Stevens v. Gladding, 1855, 17 How. 447, 448, 451, 15 L.Ed. 155.

throughout the nation, without ancillary proceedings in a variety of jurisdictions, could be duplicated by the decree of any state court. In effect, to deny jurisdiction to the federal court would be to sacrifice the best interests of the parties to the mortgage, for they would be deprived of the opportunity of having an adjudication which would determine, for all time, and for all jurisdictions, the rights to the property. With only a state decree, the purchaser at the sale could be confronted with adverse claims in every state in which he sought to exhibit the picture. Ancillary proceedings would be necessary to satisfy claimants in good faith or other, or to appease the fears of hesitant exhibitors.

The argument against the jurisdiction of the federal court derived from analogy to actions to determine rights of assignees or rights of heirship does not detract from the conclusion here reached. Rights of heirship and rights stemming from assignments are a part of the common law of the United States, and are recognized wherever its principles obtain. Their enforcement depends on established principles which remain the same whether they relate to copyright, patents or other property.[39] When we come, however, to the *copyright* itself, we are dealing with a special species of property which is the creature of the Congress, the right to mortgage which has its sole source and origin in the laws of the United States. Any action to foreclose such mortgage must be grounded upon the existence of a valid mortgage, under a copyright valid under the laws of the United States. The plaintiff, in a proceeding to foreclose, grounds his action upon the assertion of such validity and compliance with the federal recordation provisions.

Implicit in any decree ordering foreclosure would be the finding that the mortgage was valid and enforceable under the law which gave it existence,—a law of the United States. And the actual foreclosure is the *enforcement* of a right arising under the laws of the United States. So the whole proceeding calls for the construction of a law of the United States. Such construction is essential to the case. Without it, no binding decree could be made. Hence, whether the problem be viewed from the nature of the jurisdiction of the federal courts, the nature of the copyright, or the source of the right to mortgage, the conclusion is warranted that the right to foreclose a copyright exists in the federal courts. A method of foreclosure not being prescribed, the Court, in the exercise of its equity jurisdiction, could prescribe proper notice either by analogy to the sales on execution as to which the state laws are followed[40] or by devising a special procedure which satisfies the requirement of due process.[41]

Judgment and declaration will, therefore, be for the plaintiff as prayed for in the Complaint.[42]

39. Leaver v. Parker, 1941, 9 Cir., 121 F.2d 738; Loew's, Inc. v. Superior Court, 1941, 18 Cal.2d 419, 115 P.2d 983; Estate of White, 1948, 84 Cal.App.2d 409, 414–415, 190 P.2d 968.

40. Rule 69(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

41. An examination of the file in the foreclosure proceeding discloses that the Court prescribed a method of sale conforming to that usually followed in sales by the United States Marshal and public notice was given, as is customary in such cases.

42. The sale of the copyright was incidental to the sale of other personal property covered by the mortgage. No question is raised as to the power of the court, if it acquired jurisdiction, to foreclose as to the other property. See, 50 C.J.S., Judgments, § 657; Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L. Ed. 1148; Township of Hillsborough v. Cromwell, 1945, 326 U.S. 620, 629, 66 S.Ct. 445, 90 L.Ed. 358; Mullen v. Fitz Simons & Connell Dredge & Dock Co., 1949, 7 Cir., 172 F.2d 601, 604; Strachman v. Palmer, 1949, 1 Cir., 177 F.2d 427, 429–430.