**INDEPENDENT FILM DISTRIBUTORS, LTD., Plaintiff,**

v.

**CHESAPEAKE INDUSTRIES, Inc., Defendant.**

United States District Court
S. D. New York.
Feb. 20, 1957.

Kramer, Marx, Greenlee, Backus & MacMahon, New York City, Lloyd F. MacMahon, New York City, of counsel, for plaintiff.

James L. O'Connor, New York City, John R. McIntosh, New York City, of counsel, for defendant.

BICKS, District Judge.

Plaintiff, alleging sole proprietorship of the copyrights in two motion picture photoplays, has moved to strike the First Defense alleged in the answer as insufficient in law and for a preliminary injunction enjoining infringement of its copyrights. The motion was argued as one for summary judgment interlocutory in character, and will be treated as such.

There is no genuine issue of fact, the ground of opposition being that defendant by virtue of a sale under the judgment hereinafter discussed, has succeeded to plaintiff's ownership of the copyrights.

Defendant's sole predicate of title is a bill of sale executed by a Referee appointed to sell in a final judgment of foreclosure and sale made by the New York Supreme Court. The decision turns upon the effect of that final judgment. It was made in an action brought by Pathe Laboratories, Inc. et ano. against Independent Film Distributors, Ltd., the plaintiff in the instant suit, Souvaine Selective Pictures, Inc. and others, to foreclose a motion picture film laboratory lien granted by § 188 of the Lien Law of the State of New York, McK.Consol. Laws, c. 33.[1] To the extent material for present purposes the amended complaint alleged that: (i) Souvaine is a New York Corporation engaged in the business of distributing and exploiting motion picture photoplays; (ii) Independent Film Distributors, Ltd. is a corporation organized under the laws of the United Kingdom; (iii) Souvaine was the distributor of a number of motion picture photoplays owned by various persons, among them being two entitled "Treasure Hunt", and "The Galloping Major", respectively, owned by Independent; (iv) between May 1, 1951 and September 1, 1952 Pathe Laboratories, Inc. at the special instance and request of Souvaine performed certain work for Souvaine with respect to the above named two photoplays and twelve others for which films had been delivered by Souvaine into Pathe's possession; (v) the work consisted of the processing of negatives and manufacture of prints; (vi) the agreed price and reasonable value of the work and materials furnished in connection with the two plays owned by Independent and the twelve plays owned by others was $69,-767.31, of which sum $55,968.81 was paid and balance of $13,798.50 remained unpaid; (vii) Pathe is in possession and control of 9 reels dupe negative-picture, and a like number of reels dupe negative-track relating to the motion picture photoplay "The Galloping Major", and 8 reels each of dupe negative-picture and dupe negative-track relating to the motion picture photoplay "Treasure Hunt", as well as a number of reels relating to the plays owned by others than Independent, all of which had been delivered to Pathe by Souvaine with the consent or knowledge of the respective owners of said photoplays; (viii) by reason of the failure of Souvaine to

---

1. Lien Law, § 188 provides: "All persons * * * engaged in the business of a motion picture film laboratory * * * shall have, in every case where such persons * * * copy, print, * * * or in any manner prepare, at the request, with the consent or with the knowledge of the owner or his agent, a positive print or prints from a motion picture negative film for the owner thereof, or for a lessee, licensee, mortgagee, conditional vendee or person in possession thereof, a lien upon such positive prints and upon the negative film from which such positive print or prints were made, * * * or prepared, including the distribution and exhibition rights therein of all persons, firms or corporations at whose request, or with whose knowledge or consent such positive prints were copied, printed, * * * or prepared, and upon any and all other negative or positive prints or films of such owner, lessee, licensee, mortgagee or conditional vendee in their possession, including the distribution and exhibition rights therein, of all such persons, firms and corporations aforesaid * * *. Possession of motion picture film by any person who shall deliver the same to any motion picture laboratory shall be presumptive evidence of the consent of the owner thereof to the performance of the work which may be done thereon or therefrom by such laboratory. * * * "

pay the unpaid balance, the successful bidder at the foreclosure sale prayed for "is entitled to succeed to all the rights in and to the photoplays and" reels of film above described, "including, but not by way of limitation, all of the rights of the owners and of the distributors". The relief demanded was a personal judgment against Souvaine for $13,798.50 and interest and that the Court decree foreclosure of Pathe's motion picture laboratory lien, "barring and foreclosing defendants, and each of them and all persons claiming under them, of all right, title, interest, lien, claim or equity in and to the motion pictures affected by said motion picture laboratory lien, the material relating to said motion pictures, and the distribution and exhibition rights therein; that the said motion pictures and materials relating to said motion pictures be sold according to law; * * *."[2]

Souvaine was served with process within the State of New York. Independent was served out of the State[3] without an order presumably pursuant to § 235 of the New York Civil Practice Act. Neither of these defendants appeared in the action. The suit proceeded to judgment by default[4] decreeing that all right, title and interest which the defendants "had in and to the chattels and materials described in the verified amended complaint herein, and hereafter more particularly described, be sold at public auction * * *" by a ref-

eree named therein, and "that the defendants [Souvaine and Independent] and all persons claiming under them be and they hereby are forever barred and foreclosed of all right, interest and title, claim, lien and equity of redemption in said chattels and materials and each and every part thereof." The judgment recites, " * * * and that the following is a description of said chattels and materials referred to above:

"Galloping Major"
9 reels dupe negative-picture
9 reels dupe negative-track

"Alice in Wonderland"
10 reels printing postive-picture
10 reels printing positive-track

"Treasure Hunt"
8 reels dupe negative-picture
8 reels dupe negative-track"

The Referee, consistent with the terms of the judgment and the rules and practice of the State Supreme Court gave notice of the time and place of the sale. As stated in his report of sale he "attended in person and agreeably to such notice offered the said chattels in one lot for said sale to the highest bidder and sold the same to the Omega Film Corporation * * * in [sic] the sum of $100.00, that being the highest sum bid therefor." Subsequent to the sale he "executed, acknowledged and delivered to said purchaser a good and

2. Whether under the New York Statute a motion picture film laboratory may have a lien upon a motion picture photoplay owned by A for work done upon film relating to a play owned by B, because they employed a common distributor who delivered the films owned by each of them severally to a laboratory has not been raised. The view the Court takes of this case does not require consideration of that problem.

3. The summons and complaint were served upon the Secretary of Independent in London, England by a solicitor of the Supreme Court of Judicature England. Under § 233 New York Civil Practice Act service without the state in lieu of publication may be made, among others by a

solicitor duly qualified to practice in the country where service is made.

4. It appears that the suit was discontinued without prejudice and without costs against all defendants other than Souvaine and Independent. The final judgment, however, decreed sale of a film alleged in the complaint to be owned by one of the defendants against whom the action was discontinued. The effect of such discontinuance upon the subrogation rights of Souvaine and Independent in the event they paid the judgment and the effect of the possible prejudice resulting therefrom upon Pathe's right to recover, had not been argued, perhaps because it would constitute a collateral attack on the judgment.

sufficient bill of sale of the chattels sold." The chattels so sold were described in said order and in the bill of sale executed by him as they were described in the judgment, i. e. as a specified number of reels, both picture and track.

Plaintiff argues in his brief that the judgment of foreclosure and sale and the bill of sale delivered to the successful bidder upon the sale held pursuant thereto, refer only to chattels, the films themselves, and do not even purport to relate to the copyright interest of Independent in the plays. The defendant on the other hand points to the language of Lien Law, § 188 which appears to extend the lien of a motion picture film laboratory to distribution and exhibition rights and to the reference to such rights in the prayer for relief in the amended complaint. The issues posed by these divergent contentions are not reached in this case for, assuming arguendo that Lien Law, § 188 may be construed as validly creating a lien upon a copyright,[5] and that the default judgment of foreclosure directed a sale of, and the bill of sale delivered thereunder recited that it transferred, the copyright, the purchaser at the sale still could not acquire the copyright. The delivery of the summons and amended complaint to an officer of Independent in England did not constitute permissible service under § 235, New York Civil Practice Act[6] and did not confer jurisdiction upon the State Court over the person of the plaintiff here—the copyright owner. Such in personam jurisdiction was a prerequisite since a copyright is an intangible, incorporeal right in the nature of a privilege or franchise which does not have a situs apart from the domicile of the owner. Bryan v. University Publishing Co., 1889, 112 N.Y. 382, 19 N.E. 825, 2 L.R.A. 638; Ebsary Gypsum Co. v. Ruby, 1931, 256 N.Y. 406, 176 N.E. 820; Restatement, Conflict of Laws § 51 (1934). It is a res distinct from the property to which it attaches. 17 U.S.C.A. § 27;[7] Stephens v. Cady, 1852, 14 How. 528, 14 L.Ed. 528. Absent jurisdiction over the proprietor of the copyright the New York Court did not have jurisdiction of the copyright. It could not be reached by the decree of that court and could not be affected by a bill of sale made in accordance with such decree. See Fall v. Eastin, 1909, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65.

Motion for summary judgment interlocutory in character in favor of plaintiff granted.

---

5. While § 188 of the New York Lien Law has been on the books since 1923 it has never come under judicial scrutiny. Query whether a copyright may be subjected to a lien otherwise than in the manner provided in 17 U.S.C.A. § 28. See In re Leslie-Judge Co., 2 Cir., 1921, 272 F. 886, certiorari denied sub nom. Green v. Felder, 1921, 256 U.S. 704, 41 S.Ct. 625, 65 L.Ed. 1180; Security-First Nat. Bank of Los Angeles v. Republic Pictures Corp., D.C.S.D.Cal.1951, 97 F. Supp. 360.

6. § 235, New York Civil Practice Act: "Where the complaint demands judgment that the defendant be excluded from a vested or contingent interest in or lien upon a specific real or personal property within the state or that such an interest or lien in favor of either party be enforced, regulated, defined or limited, or otherwise affecting the title to such property * * *"

7. 17 U.S.C.A. § 27 provides: "The copyright is distinct from the property in the material object copyrighted, and the sale or conveyance, by gift or otherwise, of the material object shall not of itself constitute a transfer of the copyright, nor shall the assignment of the copyright constitute a transfer of the title to the material object; but nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possession of which has been lawfully obtained."