INDEPENDENT FILM DISTRIBUTORS,
Ltd., Plaintiff-Appellee,

v.

CHESAPEAKE INDUSTRIES, Inc.,
Defendant-Appellant.

No. 55, Docket 24643.

United States Court of Appeals
Second Circuit.

Submitted Nov. 12, 1957.

Decided Jan. 2, 1958.

Kramer, Marx, Greenlee, Backus & MacMahon, New York City (Lloyd F. MacMahon and Roger W. Langsdorf, New York City, of counsel), for plaintiff-appellee.

James L. O'Connor, New York City, for defendant-appellant.

Harry J. Scanlan, New York City, substituted attorney for defendant-appellant.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and LEIBELL, District Judge.

LEIBELL, District Judge.

By virtue of two assignment agreements one dated June 29, 1950, and the other June 18, 1952, plaintiff-appellee claims to have acquired the common law copyright to two motion picture photoplays entitled "The Galloping Major" and "Treasure Hunt." Subsequently, by agreements dated August 2, 1951 and July 18, 1952, plaintiff assigned the distribution rights of these two photoplays for the Western Hemisphere to Souvaine Selective Pictures, Inc. According to the affidavit of plaintiff's attorney in the present action these agreements were terminated respectively February 25, 1953, and August 3, 1953.

While the agreements were in force, Souvaine deposited "negatives" of the two photoplays for reproduction and printing with Pathe Laboratories, Inc. Whether they were original negatives, or the "dupe negatives" which were later sold at auction is not clear, but the probabilities are that the "dupe negatives" were deposited. Upon Souvaine's default in payment of its liabilities to Pathe for

services allegedly rendered by the latter, Pathe asserted a statutory lien under Sec. 188 of the New York Lien Law, McKinney's Consol.Laws, c. 33 on the "dupe negatives" in its possession.

On August 20, 1953, at which time plaintiff's two agreements with Souvaine allegedly had been terminated, Pathe and Chesapeake, affiliates, instituted an action in State Supreme Court against Souvaine and Independent to foreclose the claimed statutory lien upon the following:

" 'Galloping Major'
    9 reels dupe negative—picture
    9 reels dupe negative—track
" 'Treasure Hunt'
    8 reels dupe negative—picture
    8 reels dupe negative—track"

and upon other films owned by other defendants in said action.

In the State Court action, Souvaine was served here. Independent was served in England by way of substituted service under Sec. 235 of the New York Civil Practice Act. Neither Souvaine nor plaintiff herein appeared or answered in that action. On April 11, 1955, a default judgment was granted decreeing that Souvaine and Independent were foreclosed of all right, title and interest in the "dupe negatives" mentioned above and further ordered that they be sold at public auction.

Thereafter the "dupe negatives" owned by Independent were sold at public auction to Omega Film Corporation for the sum of $100. That corporation authorized Chesapeake to dispose "of all right, title and interest of Omega Film Corporation in and to 'The Galloping Major' and 'Treasure Hunt.' " Allegedly under that arrangement, defendant circulated a brochure to distributors and exhibitors of motion picture photoplays which provided, under the bold print heading "FEATURE PICTURES," the following:

"Chesapeake is offering *100% of all rights for these 2 pictures:*

| THE GALLOPING MAJOR | TREASURE HUNT |
|---|---|
| With Basil Radford | With Jim Edwards |
|     Jimmey Hanley |     Marsha Hunt |
|     Joyce Grenfell |     Naunton Wayne |
| |     Anthene Sexler |
| Producer—Monja | Producer—Anantole De |
|     Danischewsky |     Grunwald |
| Director—Henry | Director—John Paddy |
|     Cornelius |     Carstairs |
| Released—1951 | Released—1952" |

[Italics ours.]

The offering was not limited to Omega Film Corporation's rights, or to Chesapeake Industries, Inc.'s rights, in the "dupe negatives." It purported to sell 100% of all rights, which could be interpreted as *including the right to print positives and exhibit them.*

By reason of defendant's conduct in distributing this brochure Independent instituted an action in the District Court against Chesapeake alleging that "Defendant has infringed and intends to continue to infringe plaintiff's copyright in said photoplays ["THE GALLOPING MAJOR" and "TREASURE HUNT"] by offering and continuing to offer said rights for sale without the privity or consent of the plaintiff, and with full knowledge of the fact that *plaintiff was and is the sole* owner of the copyright in and to said photoplays." Chesapeake interposed an answer to the complaint and as a first affirmative defense set up the default judgment and the foreclosure sale of the above-mentioned dupe negatives in the State Court action. Plaintiff made a

motion to strike out the defense as insufficient in law and for a preliminary injunction. The motion was argued as a motion for summary judgment and treated as such by the judge on a statement by the attorneys that there were no issues of fact.

Defendant, Chesapeake, contended before the District Judge that by virtue of the foreclosure sale in the Supreme Court action it has succeeded to the ownership of plaintiff Independent's common law copyrights. The judge ruled against defendant's contention, on the ground that the State Court ordering the foreclosure sale lacked jurisdiction over the person of Independent, the plaintiff herein, the owner of the common law copyright. The court held: "Such in personam jurisdiction was a prerequisite since a copyright is an intangible, incorporeal right in the nature of a privilege or a franchise which does not have a situs apart from the domicile of the owner. * * * Absent jurisdiction over the proprietor of the copyright the New York Court did not have jurisdiction of the copyright. It could not be reached by the decree of that court and could not be affected by a bill of sale made in accordance with such decree" [148 F.Supp. 611, 614].

On March 6, 1957 the judge signed an interlocutory judgment stating that the brochure printed, published and distributed to distributors and exhibitors of motion picture photoplays by the defendant constituted an infringement of plaintiff's copyrights, and decreeing "That the defendant, Chesapeake Industries, Inc., its affiliates, its and their officers, agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of this interlocutory judgment, by personal service or otherwise, are hereby enjoined and restrained from directly or indirectly selling or causing to be sold, offering or causing to be offered, using or causing to be used, printing or causing to be printed, publishing or causing to be published, copying or causing to be copied, producing or causing to be produced, reproducing or causing to be reproduced, distributing or causing to be distributed, licensing or causing to be licensed, and exhibiting or causing to be exhibited, the photoplays entitled 'Treasure Hunt' and 'The Galloping Major' or any rights therein and thereto, and from infringing upon or violating the plaintiff's copyrights therein." The judge left for a separate trial the question of damages.

Defendant appealed. Defendant states that for the purpose "of this appeal Chesapeake raises no question concerning the ownership of the common law copyright"; but argues that (1) it was error to hold that the printing, publishing and distribution of the brochure by defendant constituted an infringement of plaintiff's copyrights on the photoplays; and (2) it was error to enjoin defendant from selling or offering to sell the physical copies of the copyrighted works which were in defendant's possession as a result of the lien foreclosure sale in the State Court.

■ In support of its first contention defendant urges that absent copying, there can be no infringement of copyright citing Mazer v. Stein, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630. A copyright confers on its holder "the sole right of multiplying copies." There is no claim made here that the "dupe negatives" are different from the original negatives. As plaintiff states in its answering brief:

"Furthermore, it is obvious that 'dupe negatives' are exact copies, image for image, and sound for sound. Indeed, the foundation of Chesapeake's defense is a lien for the 'reproduction and printing' of Independent's photoplays."

That lien is based on Section 188 of the New York Lien Law.

Defendant is being charged with the unauthorized offering of identical films and sound tracks for sale with "100% of all rights" which would include the right to make positives therefrom and to exhibit the positives to the public, in violation of plaintiff's common law copyright.

That would constitute a copyright infringement. Tiffany Productions v. Dewing, D.C.D.M.D.1931, 50 F.2d 911, 914. If Pathe Laboratories had no lien on the dupe negatives which included the right to print positives therefrom and exhibit the same, then plaintiff, Chesapeake, as the successor of Omega Film Corporation, the purchaser at the foreclosure in the State Court action, acquired no right of that kind which Chesapeake could sell.

The record does not contain copies of whatever agreements were made, when Souvaine engaged Pathe to do some work in relation to the films, if there was such an engagement. Were the "dupe negatives" the films Souvaine delivered to Pathe? Were original negatives delivered to Pathe from which Pathe made the "dupe negatives"? What work, *if any*, did Pathe do? Did Pathe produce positives from the negatives it received from Souvaine? There is a difference between printing positives and making a "dupe negative" from a negative film. Making a positive from a negative is the first step in making a "dupe negative." The positive is then photographed on a film which is known as a "dupe negative." Positives for exhibition purposes can be printed from either an original negative or a "dupe negative."

The affidavit of MacMahon, attorney for Independent, states only that Souvaine "deposited negatives of the films in question for reproduction with Pathe Laboratories * * * a corporation engaged in the business of reproducing prints of motion pictures * * *." That does not answer the questions. Were the negatives deposited the "dupe negatives"? Was Pathe to make positives? If it made the positives what happened to them? All this would have a bearing on the extent of the lien Pathe had under Section 188 of the New York Lien Law and is basic on the question of Chesapeake's title.

We do not have a certain letter agreement of July 23, 1951, between Souvaine and Pathe Laboratories. Nor do we have the letter agreement of February 11, 1952, between Souvaine, Pathe Laboratories, and Pathe Industries, Inc., now known as Chesapeake Industries. Both are referred to in a letter agreement of September 1, 1952, which is Ex. B of the complaint in the State Supreme Court action; but we do have a copy of the said complaint, which is Ex. A annexed to the affidavit of Attorney O'Connor submitted in opposition to plaintiff, Independent's motion for a preliminary injunction. Nor do we have either the agreement of August 2, 1951, or that of July 18, 1952, between plaintiff and Souvaine, showing the extent of Souvaine's authority.

The letter of September 1, 1952, seems to be an account stated for laboratory work done on a number of photoplays, on which (out of a grand total of about $69,767.31) $13,430.64 was still unpaid. It does not appear in what way any part of the $55,968.81, actually paid on account of the larger amount, was apportioned among or applied to the debit account of the various photoplay films (14 in number) that were left with the Laboratories by Souvaine, apparently to perform work thereon or therefrom. Souvaine was a distributor. The films deposited with Pathe were owned by a number of corporations and companies. The claimed liens on only three films were eventually foreclosed in the State Court action. Two of the films were owned by Independent and are involved in the present action.

The District Judge raises a point in footnote 2 of his opinion, which reads as follows:

"2. Whether, under the New York statute, a motion picture film laboratory may have a lien upon a motion picture photoplay owned by A for work done upon film relating to a play owned by B, because they employed a common distributor who distributed the films owned by each of them severally to a laboratory, has not been raised. The view the Court takes of this case does not require consideration of that problem."

The District Judge concluded that the State Court did not have jurisdiction over

Independent in the State Court action. The question posed in the footnote may require an answer when all the facts in this case are ascertained on a trial of the issues.

The distribution and exhibition rights mentioned in Section 188 of the New York Lien Law apply to a negative film, only when the laboratory has made "a positive print or prints from a motion picture negative film"; and then the lien attaches to both the positive prints and the negative film. There has been no showing either in the State Supreme Court lien foreclosure action or in this present action that the Laboratory ever made any positive films from any negatives of the two films, "The Galloping Major" and "Treasure Hunt."

Paragraph Tenth of the complaint in the State Court action does allege that Laboratories did "certain work, labor and services for said defendant (Souvaine) with respect to certain motion picture photoplays (14 in number) listed in Exhibit 'A'" annexed to the complaint, but it does not state in respect to which of the list the work was done, or the nature and character of the work done.

■ A dupe negative, by itself, cannot be distributed or exhibited. Positive films are distributed to motion picture theatres for exhibition purposes. A careful reading of Section 188 of the New York Lien Law supports the interpretation that no lien on a negative film, accompanied by a lien on the right of "distribution and exhibition," can attach until positive films are made by the laboratory from the negative. That is a reasonable interpretation. You cannot "distribute" a negative film, nor can you "exhibit" it. But you can do both with a positive film.

■ This Court is of the opinion that a trial should be had at which all documents and records relating to the arrangement between Souvaine and Pathe Laboratories, the work done by the Laboratories, the proper cost thereof, the amounts paid therefor, the lien claimed, the amount thereof, its foreclosure, the auction and the transfer of title by the Referee, may be submitted and examined by the trier of the facts. It may be found that there never was any lien under Section 188, to foreclose in the State Court action. The question of the service of process on Independent under Section 235 of the Civil Practice Act, in the State Court action to foreclose the claimed lien, may not be reached. The Federal Courts should know all the pertinent facts of the case at bar before applying the New York Lien Law, if it is applicable.

An examination of the statutes of other states reveals that only New Jersey has a Lien Law quite similar to that of New York with respect to processors of motion picture films. See N.J.S.A. 2A:44–169 thru 2A:44–173. Research indicates that the New Jersey statute (enacted in 1937), like the New York statute (enacted in 1923), has never been interpreted or construed judicially in any reported decision.

We are of the opinion that the District Court should have granted only that part of Independent's motion which sought a preliminary injunction, and it should have denied, without prejudice, that part which sought to strike as insufficient in law the first defense alleged in the answer. The interlocutory judgment awarding an interlocutory injunction is reversed and the cause remanded with instructions to grant a preliminary injunction pending a trial of all issues, including damages. No costs.

CLARK, Chief Judge (concurring).

While I do not particularly object to a remand for trial, since a trial of the issue of damages is necessary in any event and more detailed findings may well be reassuring, yet I think it should be noted that this is a bit of a luxury, if not a waste of time. If, as my brothers suggest, a trial may develop that Pathe Laboratories had no statutory lien on the films in question, then of course the New York foreclosure passed nothing to the purchasers and to the defendant. But the district court's conclusion that plaintiff's copyright interest was not fore-

closed because it was not personally served leads to the same consequences. My brothers apparently wish to avoid this adjudication as to the New York action. Logically I should think adjudication as to the necessity of personal service might come first, since it concerns matters of the court's jurisdiction. Herein I see no reflection on the New York court's default judgment (indeed, hardly as much as in my brothers' suggestion of no basic lien at all for the state action) ; but in any event I believe it a necessary question for our determination. And Judge BICKS' answer I think correct for the reasons he states. Hence his decision must stand in any event.

Perhaps the present judgment is susceptible to too broad an interpretation; on final judgment it should be made wholly clear that the defendant is enjoined from selling exhibition rights in the films, not from selling the physical films themselves.